Filed 12/9/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOSE O., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> JOSE O., <br><br>     Defendant and Appellant. | A141001 <br><br> (Mendocino County Super. Ct. No. SCUK-JDSQ-14-1688302-002) |

Jose O. challenges juvenile court orders dismissing dependency jurisdiction under Welfare and Institutions Code section 300, finding he committed the misdemeanors of contributing to the delinquency of a minor, simple battery, and obstructing or resisting a peace officer, and declaring him a ward of the court under Welfare and Institutions Code section 602.[1] He argues (1) the juvenile court abused its discretion by treating him as a delinquent instead of preserving his status as a dependent and (2) insufficient evidence was presented that he contributed to the delinquency of a minor. In the unpublished portion of this opinion, we conclude that the court properly treated Jose as a delinquent. In the published portion of this opinion, we agree there was insufficient evidence he

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.A.

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

contributed to the delinquency of a minor. Accordingly, we reverse that finding and remand for a further disposition hearing but otherwise affirm the judgment.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Jose's family has a long history of involvement in the child-welfare system, and Jose became a dependent of the Mendocino County juvenile court in 2008. He was eventually placed in a group home in Antioch, from which he ran away in September 2013.

The following month, the Mendocino County District Attorney's Office filed a wardship petition under section 602, subdivision (a) alleging that Jose, who had recently turned 15 years old, had committed the misdemeanor of contributing to the delinquency of a minor and the felonies of battery for the benefit of a gang and participation in criminal street gang activity.[2] A subsequent wardship petition filed in January 2014 alleged an additional misdemeanor count of resisting or obstructing a peace officer.[3]

At the detention hearing, the juvenile court noted that Jose was a dependent and ordered the county probation and social services departments to prepare a section 241.1 report on whether dependency or delinquency jurisdiction was more appropriate. The departments' report recommended that the court assume delinquency jurisdiction over Jose. After considering the report and the parties' arguments, the court found that Jose's "needs [would be] best served by proceeding in the delinquency court" and terminated the dependency proceeding.

At the jurisdiction hearing, the juvenile court heard evidence on the four crimes Jose allegedly committed. The first, contributing to the delinquency of a minor, involved A.N., Jose's girlfriend, who was 14 years old at the time of the hearing in January 2014.

---

[2] The misdemeanor count was brought under Penal Code section 272, subdivision (a)(1), and the felony counts were brought under Penal Code sections 242 and 186.22, subdivision (d) (battery) and Penal Code section 186.22, subdivision (a) (gang activity).

[3] This count was brought under Penal Code section 148, subdivision (a)(1).

Steven N., A.N.'s father, testified that in mid-September 2013, A.N. was on probation for associating with gangs, and he was concerned she was violating the terms of her probation by doing "various things," including "[r]unning away, drug use, [and] gang activity." He told A.N. that he did not approve of Jose because "of the lifestyle that he lives or that he's involved in."

A.N. ran away during that time period, and Steven N. went to Jose's house in Ukiah several times to look for her. The first two times, he did not find her. The third time, he parked in view of the house and "sat there and . . . waited to see if there was any movement." He eventually saw Jose and A.N. walking down the street from the direction of the house. They saw him and ran, and he chased them in his car to a nearby bar. After Steven N. made "a couple turns around [the bar], . . . [Jose and A.N.] both split up, and he went one way and she went the other way." Steven N. was unable to catch his daughter.

The next day, Steven N. and his father went to Jose's house. Steven N. testified that Jose's mother told him "[t]hat [Jose and A.N.] were there . . . the night before . . ., but she told them to leave." One of Jose's brothers "told [Steven N.] that [A.N.] might be down the street . . . [¶] . . . [¶] . . . on Laws Avenue."[4] Steven N. drove to a group of apartments on that street and saw A.N. "walking [with Jose] on the back side of the apartments going toward[] where her friend lives." They looked toward Steven N., "made eye contact" with him, and "ran." Jose "jump[ed] a fence" and escaped, but A.N. was caught. Steven N. observed that A.N. seemed to be on drugs because her "eyes [were] dilated," her "mouth [was] dried," and she seemed "very jittery."

The remaining counts alleged—battery for the benefit of a gang, participation in criminal street gang activity, and resisting or obstructing a peace officer—are not at issue in this appeal, and we do not discuss them in detail. Suffice it to say, the prosecution presented evidence in support of the first two counts that in November 2013, Jose and three other boys, two of whom were Jose's brothers, beat up another boy, Robert P. A

---

[4] Steven N.'s testimony about what Jose's mother and brother said was received for the "limited purpose" of showing "what [Steven N.] did next."

sheriff's deputy testified that Robert P. told him Jose had yelled "south side" during the attack, but Robert P. testified that it was another boy, not Jose, who did so. In support of the last count, the prosecution presented evidence that Jose ran from probation officers and a sheriff's deputy in January 2014 when they went to his house to check on the same two brothers.[5] Jose surrendered after he was caught on a staircase at a nearby apartment complex.

The juvenile court granted Jose's motion to dismiss the gang-activity count. It also reduced the battery count to a simple misdemeanor battery under Penal Code 242 by eliminating the allegation that the battery was committed for the benefit of a gang. The court then found true the simple-battery count and the remaining two counts of contributing to the delinquency of a minor and resisting or obstructing a peace officer. At the disposition hearing, the court declared Jose to be a ward of the court and ordered him to attend the Bar-O-Boys Ranch in Del Norte County with a maximum commitment term of one year and six months, comprised of one year for contributing to the delinquency of a minor, two months for simple battery, and four months for obstructing or resisting a peace officer.

II.
DISCUSSION

A.    *The Juvenile Court Did Not Abuse Its Discretion by Treating Jose as a Delinquent Instead of a Dependent.*

Jose claims that the juvenile court abused its discretion under section 241.1 by determining that he should be treated as a delinquent instead of a dependent. We are not persuaded.

The section 241.1 report submitted by the probation and social services departments stated that the delinquency proceedings were initiated based on the attack on

---

[5] One of those probation officers testified that A.N. exited Jose's house after Jose fled.

Robert P. and the attempt to evade the probation officers and sheriff's deputy.[6]  Jose had been in trouble at least once before:  in December 2012, he was arrested for vandalism, but he "was reprimanded and the case was dismissed."

According to the report, there had been "37 referrals for the investigation of child abuse or neglect associated with [Jose's] family" dating back to late 2002, when Jose was four years old.  As a result of these referrals, several child-welfare cases were opened, the most recent resulting in Jose's placement in the Antioch group home from which he had run away.  The report characterized his "home environment" as "inconsistent and unpredictable" and stated that such issues contributed to his criminality.  It noted that the social services department's "involvement has been minimal," although Jose "was receiving various services" at the group home and had an individualized education plan to address his educational needs.

The report concluded that "Jose's needs are best met pursuant to . . . [s]ection 602 at this time," explaining:

> Jose has struggled to abide by the rules and regulations of his group homes.
> Jose has failed to obey the law . . . and has shown a pattern of delinquent,
> high-risk behavior.  Jose appears to have issues regarding substance abuse
> and gangs.  Jose poses a risk to himself and to the community and appears
> to be in need of supervision and immediate consequence.  [¶]  . . . Jose's
> gang status has increased to a point that child welfare services have been
> ineffective in addressing his needs or the needs of the family.  He has been
> AWOL from group home placement since September 10, 2013.  During
> this time relatives knew of his whereabouts but remained voiceless about
> assisting in his return.  Meanwhile, his criminal and gang issues
> exacerbated.

At the section 241.1 hearing, the juvenile court admitted the report into evidence and heard additional statements from various parties.  Jose's dependency counsel stated that Jose told her "[h]e would prefer to be part of the delinquency court . . . [¶] . . . because he would have a better opportunity to return to [his] mother.  He understands the

---

[6] The report also stated that Jose had been arrested in September 2013 for contributing to the delinquency of a minor, presumably A.N., but that, at least initially, the probation department "released [him] to the Department of Social Services and dismissed [that] case in the interest of justice."

5

rules are stricter and the consequences greater if he's not able to follow the rules. . . . [¶] Many of his brothers have been given that opportunity to return to [their] mom under the system, and he understands the rules. He wants to do that. So that is his request."

Jose's delinquency counsel disagreed, saying, "I spoke with Jose as well. I did discuss with him the nature of the proceedings. I don't recall him saying he wished to become a [section] 602 ward of the court. I do recall him saying he wants to work hard to return to [his] family." Counsel argued that the report did not show "a pattern of delinquent behavior." While Jose had had a few contacts with law enforcement, he had generally done well in his group home. Counsel also argued that the report's assertions of Jose's problems with gang involvement and substance abuse were unsupported. He concluded, "[I]t doesn't look like [the social services department has] tried hard on [section] 300. They even admit the county's contacts with [the family] have been minimal. These are minor charges he's facing. [¶] He did quite well for a long time at the Antioch school. I don't know what happened. But we have basically a stumble in what otherwise he has done fairly well. I don't think this rises to the level where he should become a [ward under section] 602. I really don't."

Jose's mother and father also stated their preference that Jose remain a dependent. Mother's counsel explained that mother did "not have stable housing. Her house burned down and she's staying with her mother. [¶] And it's very, very crowded housing at this time and she would prefer [that] the department [of social services] . . . continue work[ing] with [Jose]" to avoid Jose's possible return to her through a delinquency case.

The juvenile court ruled, "Jose is a young man who unfortunately has been in the dependency system for many years. For the last several months he has not been cooperative with social worker services. He has not been attending school. He has incurred misdemeanor charges which were initially . . . handled informally, but [this approach] was not successful in getting him back on track with a program set up through his social worker, and he now has felony charges pending from November of last year. [¶] For all these reasons[,] the court finds that at present his needs are best served by

proceeding in the delinquency court." The court also ordered the dependency case terminated.

The law governing a juvenile court's determination of a minor's status as a delinquent or dependent is well established. "[C]oncurrent delinquency and dependency jurisdiction over a minor" is generally not permitted. (*In re W.B.* (2012) 55 Cal.4th 30, 46-47; § 241.1, subd. (d).) "Whenever a minor appears to come within the description of both [s]ection 300 and [s]ection 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol . . ., initially determine which status will serve the best interest of the minor and the protection of society." (§ 241.1, subd. (a).) The protocol shall include "consideration of the nature of the referral, the age of the minor, the prior record of the minor's parents for child abuse, the prior record of the minor for out-of-control or delinquent behavior, the parents' cooperation with the minor's school, the minor's functioning at school, the nature of the minor's home environment, and the records of other agencies that have been involved with the minor and his or her family." (§ 241.1, subd. (b)(2).) In addition, Rule 5.512(d) of the California Rules of Court "demands evaluation of four additional items: (1) the history of any physical, sexual, or emotional abuse of the child; (2) any services or community agencies available to assist the child and his or her family; (3) a statement by any counsel currently representing the minor; and (4) a statement by any court appointed special advocate (CASA) currently appointed for the child." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1506.) "The recommendations of both departments shall be presented to the juvenile court . . ., and the court shall determine which status is appropriate for the minor." (§ 241.1, subd. (a).)

The juvenile court's determination of a minor's status under section 241.1 is reviewed for an abuse of discretion. (*In re M.V.*, *supra*, 225 Cal.App.4th at p. 1506.) " 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious[,] or patently absurd manner that resulted in a miscarriage of justice.' [Citation.] . . . [W]e will not lightly substitute our decision for that rendered by the juvenile court. Rather, we must indulge all reasonable

7

inferences to support the decision of the juvenile court and will not disturb its findings where there is substantial evidence to support them." (*Id.* at pp. 1506-1507.)

Jose does not argue that the report failed to consider the appropriate factors or that the juvenile court applied an incorrect legal standard. Instead, he argues that the court improperly relied on (1) the nature of the counts alleged against him, (2) his failure to cooperate with the social services department, and (3) his failure to attend school. We conclude, however, that substantial evidence of each of these factors supports the court's determination.[7]

First, Jose claims that the juvenile court abused its discretion by relying on the nature of the crimes he was accused of because no felony or gang-related violations were ultimately proven. Section 241.1 contemplates that the dual-status issue will be assessed at a case's outset, however, and only requires "consideration of the nature of the *referral*." (§ 241.1, subd. (a), (b)(2), (c), italics added.) The court could not have known which counts would be proven when it ruled under section 241.1. But even if the court had been limited to considering the counts ultimately proven, it did not abuse its discretion. The report showed that Jose continued to break the law even though he had been given the chance to address previous criminal violations outside the delinquency system. This constituted substantial evidence supporting the court's treatment of him as a delinquent.

Jose also argues that the report demonstrates that, if anything, the social services department failed to support him, not that he failed to cooperate with it. We share his concern about the department's admitted lack of involvement, but he was primarily receiving services through his group home in another county, and his running away hindered any attempts the department might have made to help him. Jose's failure to cooperate with the department was substantial evidence that treating him as a delinquent was preferable. The juvenile court's determination is not unfounded simply because the department might have done more for Jose while he was within its control.

_____

[7] In light of this conclusion, we need not consider the parties' arguments involving factors and evidence on which the juvenile court did not explicitly rely.

8

Finally, Jose argues that the juvenile court improperly relied on his failure to attend school. He acknowledges that "of the evidence presented in the report and [at] the hearing, [his] struggles at school . . . are where he show[ed] the biggest problem," but he claims that "[a] fifteen year[-]old boy receiving bad grades and not attending school is not a delinquent" and needs dependency services instead. But Jose's trouble in school was only one of the factors the court found to support his treatment as a delinquent. As discussed above, Jose's criminal behavior and flight from his group home also supported the determination that delinquency status was more appropriate. There was no abuse of discretion.

> B. *The Finding that Jose Contributed to the Delinquency of a Minor Was Not Supported by Substantial Evidence.*

Jose also claims there was insufficient evidence to find that he contributed to the delinquency of a minor under Penal Code section 272, subdivision (a)(1) (section 272(a)(1)). We agree.

Generally speaking, section 272(a)(1) "makes it a misdemeanor to commit any act or fail to perform a duty that encourages a minor to commit an unlawful act or violate a court order, in other words, to contribute to the delinquency of a minor."[8] (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 709.) Section 272(a)(1) may be violated in several ways. (See § 272, subd. (a)(1); see also CALCRIM No. 2980.) The first

---

[8] Section 272(a)(1) provides in full: "Every person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 18 years to come within the provisions of Section 300, 601, or 602 of the Welfare and Institutions Code or which act or omission contributes thereto, or any person who, by any act or omission, or by threats, commands, or persuasion, induces or endeavors to induce any person under the age of 18 years or any ward or dependent child of the juvenile court to fail or refuse to conform to a lawful order of the juvenile court, or to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend to cause that person to become or to remain a person within the provisions of Section 300, 601, or 602 of the Welfare and Institutions Code, is guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail for not more than one year, or by both fine and imprisonment in a county jail, or may be released on probation for a period not exceeding five years."

9

wardship petition alleged that Jose violated section 272(a)(1) by "commit[ting] an act and omit[ting] the performance of a duty causing and tending to cause and/or by threats, commands, and persuasion, inducing and/or endeavoring to induce . . . [A.N.] . . . to come within [the] provisions of [s]ection[s] 300, 601, and 602[.]"

At the end of the jurisdiction hearing, Jose's delinquency counsel argued there was insufficient evidence showing that Jose had contributed to the delinquency of a minor by stating, "What we have is one 14-year-old hanging out with another 14-year-old. That's all we have from the evidence." The prosecutor countered that the two occasions on which Jose and A.N. ran from Steven N. demonstrated that A.N. "was with Jose for at least some of the time and that he was assisting to hide her and helping her escape from her father and from authorities." The juvenile court ruled, "[O]n more than one occasion, Jose, according to the uncontroverted testimony, made eye contact with [A.N.]'s father and being present with [A.N.] ran to avoid what was obviously an attempt by the parent to bring his daughter under control. So for this reason the Court finds that [Jose] did induce her to undertake actions which fall within . . . [section] 601. For that reason, the charge is found true."

We review the juvenile court's finding that Jose contributed to the delinquency of a minor for substantial evidence, which requires us to " ' "review[] the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt." ' " (*In re George T.* (2004) 33 Cal.4th 620, 630-631.) " 'We also presume the existence of every fact the lower court could reasonably deduce from the evidence in support of its judgment.' " (*In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1359.)

Jose does not dispute that sufficient evidence of A.N.'s delinquent conduct was presented. The juvenile court concluded that A.N.'s actions rendered her a delinquent under section 601, which provides for jurisdiction over a minor "who persistently or habitually refuses to obey the reasonable and proper orders or directions of his or her parents . . . or who is beyond the control of that person." (§ 601, subd. (a).) The

10

evidence that A.N. ran away from home and from her father when he tried to catch her was substantial evidence that she came within section 601's provisions.

We agree with Jose, however, that there was insufficient evidence he caused or contributed to A.N.'s delinquency. The evidence that Jose was present while A.N. engaged in delinquent conduct was not enough. (*Ronald M. v. White* (1980) 112 Cal.App.3d 473, 475-476.) In *Ronald M.*, the Court of Appeal affirmed a summary judgment granted in favor of two defendants in a case involving a car crash that occurred after several minors "spent a day of leisure together, some consuming alcohol, marijuana, and 'Angel Dust.' " (*Ibid.*) The plaintiff, one of the minors, contended that the defendants, two of the other minors, had violated the duty of care by contributing to his delinquency under Penal Code section 272. (*Ronald M.*, at p. 475.) The court concluded that there was "no showing that the two defendants," who "were present throughout the day" but "did not themselves consume any alcohol or drugs, . . . furnish or help to pay for any[,] . . . [or] drive the car," had done "anything violative of Penal Code section 272; they were simply present." (*Id.* at pp. 475-476; see also *People v. Simon* (1955) 45 Cal.2d 645, 646, 649 [no "reasonable cause" to believe defendant contributed to minor's delinquency where defendant was merely walking with friend who was holding liquor bottle].) And, unlike the juvenile court and the Attorney General, we attribute little significance to the testimony that Jose looked at Steven N. and thus presumably knew Steven N. was trying to catch A.N. Jose's knowledge of and presence during A.N.'s delinquent behavior simply does not prove he caused or contributed to it.

The Attorney General characterizes Jose's "conduct of repeatedly fleeing with A.N. after seeing that her father was following and attempting to contact A.N. [as] circumstantial evidence of [his] intent to commit the offense" at issue. But there is no indication that Jose said anything or made any gestures encouraging A.N. to run or that he aided her flight in any way. Nor is it reasonable to infer that A.N., who clearly did not want to return home, only ran away from Steven N. because Jose did. We disagree that Jose's flight permits the inference that he intended to encourage A.N.'s delinquent behavior, much less that it proves he caused or contributed to that behavior. We cannot

hold that a minor contributes to the delinquency of another minor when they simply run away from authority figures at the same time.

The Attorney General also claims that Jose "appeared to have a role in A.N.'s absconding because she ran away from her home a week after [he] went AWOL from his group home." But no evidence was presented about the circumstances under which A.N. originally ran away, and we agree with Jose that the minors' running away at the same time is not substantial evidence that he prompted or helped her to leave her home. Similarly, contrary to the Attorney General's suggestion, A.N.'s presence at Jose's house when Jose was arrested approximately four months later does not support a conclusion that Jose was harboring her in September 2013. There was no evidence that A.N. was a runaway in January 2014, much less that she was living at Jose's house or that Jose was doing anything other than spending time with her.

We also reject the Attorney General's implication that A.N.'s apparent intoxication immediately after being in Jose's presence supported the juvenile court's finding. Jose's presence while A.N. was under the influence of drugs, without more, is not substantial evidence that Jose provided drugs to her or otherwise encouraged her intoxication. (See *Ronald M. v. White*, *supra*, 112 Cal.App.3d at pp. 475-476.)

Finally, in the absence of any other evidence that Jose caused or contributed to A.N.'s delinquency, we do not accept the notion that Jose's flight from Steven N. supported the juvenile court's finding on the basis that flight may reflect consciousness of guilt. Setting aside the inconsistency in arguing that Jose's flight was both the criminal act itself and an act showing consciousness of guilt, the authorities on which the Attorney General relies make clear that flight alone cannot establish guilt. (*People v. Wong* (1973) 35 Cal.App.3d 812, 831 [act of concealment "warrants an inference of consciousness of guilt . . . and will be given probative force *in connection with other facts* as a relevant circumstance tending to show guilt," italics added]; CALCRIM No. 372 [flight "may show that [a defendant] was aware of [his or her] guilt," but evidence of flight "cannot prove guilt by itself"].) We conclude that insufficient evidence was presented that Jose contributed to the delinquency of a minor.

12

## III.
### DISPOSITION

The finding that Jose contributed to the delinquency of a minor is reversed. The matter is remanded to the juvenile court for a further disposition hearing. The judgment is otherwise affirmed.

_____
Humes, P. J.

We concur:

_____
Margulies, J.

_____
Banke, J.

*In re Jose O.* (A141001)

14

| | |
|---|---|
| Trial Court: | Mendocino County Superior Court |
| Trial Judge: | Honorable Cindee F. Mayfield |
| Counsel for Defendant and Appellant: | Maggie Shrout, under appointment by the First District Appellate Project |
| Counsel for Plaintiff and Respondent: | Kamala D. Harris, Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Christina vom Saal, Deputy Attorney General |