Filed 4/13/16  P. v. McNeely CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RUFUS ALEX MCNEELY,<br><br>     Defendant and Appellant. | B260602<br>(Los Angeles County<br>Super. Ct. No.  KA103336) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Victor D. Martinez, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Rufus Alex McNeely challenges his convictions for pimping, pandering, and human trafficking of a minor for a sex act. He contends that the jury was misinstructed, that his trial testimony was subject to improper impeachment, and that his counsel rendered ineffective assistance. We reject his contentions and affirm.

## RELEVANT PROCEDURAL BACKGROUND

On July 28, 2014, an amended information was filed, alleging that appellant had engaged in offenses involving L.D. and Ebony Bolden. Regarding L.D., the information charged appellant in count 1 with human trafficking of a minor for a sex act (Pen. Code, § 236.1, subd. (c)(1)), and in count 2 with pandering by procuring a minor over the age of 16 years (Pen. Code, § 266i, subd. (b)(1)).[1] Regarding Bolden, the information charged appellant in count 3 with pimping (§ 266h, subd. (a)). The information alleged under count 1 that appellant had used force or fear in connection with the offense (§ 236.1, subd. (c)(2)). Accompanying all the counts was an allegation that appellant had suffered a prior conviction constituting a strike under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Appellant pleaded not guilty and denied the special allegations.

After a jury found appellant guilty as charged and found the "force [or] fear" allegation to be true, appellant admitted the prior conviction. Appellant filed a motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to strike that strike, which the trial court granted solely with respect to count 1. The court imposed a sentence totaling 23 years to life in prison. This appeal followed.

---

[1]  All further statutory citations are to the Penal Code, unless otherwise indicated.

2

# FACTS

A. *Prosecution Evidence*

    1. *2012 Incident Involving Bolden*

El Monte Police Department Lieutenant Christopher Cano testified that on November 12, 2012, he was traveling in a police vehicle with other officers when he saw Bolden loitering near a motel. Bolden's manner of dress suggested that she was engaged in prostitution. After parking, the officers watched her.

When an SUV approached Bolden, she talked to the driver and entered the SUV. As she did so, she threw a key down onto the parking lot. After Bolden was driven away in the SUV, appellant left a van parked nearby, picked up the key, used it to enter a motel room, and returned to the van. The SUV soon returned, and the driver and Bolden entered the same motel room, where they stayed for 10 to 15 minutes before leaving the room. The driver departed in the SUV, and appellant and Bolden re-entered the motel room. When they emerged a few minutes later, the officers detained them.

According to Cano, certain social media Web sites are involved in the solicitation of prostitution. At one of those sites, the officer found Bolden's picture with a suggested "donation[]," which Cano testified was the expected price of sexual services. Accompanying the picture, was an advertisement stating, "[k]inky ebony princess, El Monte in-calls and out-calls, 24." The advertisement described Ebony, and asserted: "If you like erotic women, then I'm the one for you. No rush." The advertisement further stated that she would send real pictures of herself upon request.

El Monte Police Department Officers Richard Gonzalez and Rigoberto Polanco testified that when detained, Bolden had $4.83 and appellant had $901. According to the officers, the motel room was registered in Bolden's name.

### 2. *2013 Events Involving L.D. and Bolden*

L.D. testified that she was born in December 1996. Prior to meeting appellant, she once engaged in prostitution, but decided that she did not want to do it again. In early September 2013, L.D. was 16 and living with her family in Oakland. She encountered appellant during a "meet and chat" party line phone conversation. L.D. initially told appellant she was 18. After she remarked that problems in her family home made her want to move out, appellant said he would take care of her. L.D. decided to leave home.

L.D. met appellant at a restaurant near her house. After they entered his car, he said she was attractive, and rubbed her inner thigh. At some point, L.D. told appellant she was 16. He replied that "he didn't want to get into trouble about it, but . . . nobody ha[d] to know about it." Appellant drove L.D. to his house in Richmond, where they engaged in sex.

The next morning, appellant drove L.D. to Los Angeles. During the trip, he told her that she had to earn a specified amount of money in a week through prostitution. He told her the sex acts she was expected to perform and the prices she should charge for them. He also instructed her regarding how to talk to her customers.

After L.D. arrived in Los Angeles, she met Bolden, who created an Internet advertisement for her. Shortly after L.D. arrived in Los Angeles, Bolden told her that appellant could be "mean at times," which made L.D. fearful of him. For

4

approximately two weeks, L.D. lived with appellant, Bolden, and another woman named Jazmine in motel rooms, which they changed every day. Whenever they moved to a new motel, appellant posted an advertisement identifying L.D.'s location so that customers could arrange meetings with her by text messaging. Appellant also drove her and the two other women to locations where they worked as prostitutes. According to L.D., Bolden was the "bottom girl," that is, the person who supervised the other women when appellant was absent.

During the two-week period, L.D. received money in exchange for sex acts approximately 20 times. L.D. had "in call" meetings -- encounters in which the client came to her location -- and "out call" meetings -- encounters in which she went to the client's location. During meetings with clients, at appellant's instruction, she usually turned on her phone in order to allow appellant to hear what was "going on." She always gave appellant her earnings, and kept none. When clients texted her for services, appellant sometimes helped her draft replies. If L.D. failed to respond promptly to a text, he would yell or scream and call her a "bitch."

At some point, L.D. decided she no longer wanted to work as a prostitute, but she did not seek help from the police because appellant was usually nearby. In late September, L.D. had an argument with Bolden when appellant was not present. Later, appellant pulled L.D. into a motel room, threw her on the bed, and slapped her face three times.

After that incident, L.D. posted on Facebook that she had been "kidnapped" and brought to Los Angeles against her will. On September 27, 2013, when appellant left her in Claremont to earn money, L.D. called the police. At the request of police officers, L.D. phoned appellant to discuss a $300 "job," and engaged in text messaging with him. By text message, appellant said that L.D. was "playing

5

games" by her Facebook posting. When L.D. said she wanted to go home, appellant replied he would take her home or buy a bus ticket for her, but also tried to persuade her to stay. In a text message, he stated, "I want you to be happy and be my woman and be my ho and be my friend." L.D. understood the term "ho" to refer to her work as a prostitute.

At the police officers' request, L.D. attempted to lure appellant to a restaurant. Before appellant agreed to meet her at the restaurant, she complied with appellant's demands for photos of herself and her surroundings, including a picture of her holding some money. When appellant arrived at the restaurant, he noticed police officers and drove away at high speed.

The prosecution presented evidence that on September 27, 2013, law enforcement officials attempted to arrest appellant at a restaurant. In a marked police car with flashing lights and other vehicles, they pursued appellant's vehicle, which at times drove more than 100 miles per hour. Because appellant's vehicle was driving dangerously, the chase was terminated. Later, on October 2, 2013, in an undercover operation, officers determined that Bolden was working as a prostitute at a motel. Appellant was arrested at that motel.

Following appellant's arrest, investigating officers found numerous hotel receipts and a Motel 6 directory in his vehicle. They also extracted information from L.D.'s and appellant's cellphones regarding calls and text messages. L.D.'s phone reflected more than 20 calls and more than 30 text messages involving appellant's phone. The phone calls began approximately two weeks before September 27, 2013. Appellant's phone also disclosed calls and texts messages involving L.D.'s phone. L.D.'s phone contained pictures of appellant, and appellant's phone contained pictures of L.D.

6

B. *Defense Evidence*

Appellant testified that prior to September 2013, he lived in Richmond, where he worked as a caregiver for elderly people. At some point, he developed a romantic relationship with Bolden, and occasionally travelled to Los Angeles to see her. In November 2012, appellant visited Bolden at a motel where she was staying. He denied any awareness that she was involved in prostitution. According to appellant, he believed that she was working as a stripper. After his November 12, 2012 arrest at the motel, he was released and returned home.

Appellant further testified that in September 2013, he talked to L.D. on a chat line restricted to persons over the age of 18. According to appellant, L.D. said that she was 18 "going on 19." After meeting her, he drove her to his house, where they had sex. He then dropped her off near her house.

Appellant further testified that a week later, L.D. phoned him and asked to return to his house. Appellant permitted her to stay there while he visited San Francisco for two days. When he returned and said that he had to drive to Los Angeles in order to testify as a victim in a criminal action, she asked to accompany him. According to appellant, during the trip, he asked nothing more of L.D. than to refrain from telling Bolden that they had engaged in sex.

Appellant further testified that in Los Angeles, he stayed with Bolden in a motel room, and L.D. stayed in another motel room. Appellant devoted himself to the criminal action, and had little contact with L.D., who sometimes phoned and texted him. He acknowledged that he knew she was engaged in prostitution, but denied that he asked her to work as a prostitute or that he sought her earnings as a prostitution. According to appellant, he received no money from L.D., aside from

7

repayment for room rent he gave her and some personal items he bought for her. Appellant denied ever threatening or hitting L.D.

Appellant also denied receiving any money from Bolden or Jazmine arising from prostitution. He acknowledged that Bolden texted him daily to describe "what was going on," but maintained that she did so only to let him know that she was "safe."

Appellant further testified that because Bolden did not like L.D., he offered to help L.D. return to Oakland, but she said that she had "nowhere to go." He soon learned that L.D. had falsely accused him of kidnapping her. After agreeing to meet L.D. at a restaurant, he went there, thought L.D. was acting "funny," and drove away quickly. He denied seeing police vehicles chasing him.

## DISCUSSION

Appellant contends (1) that the trial court improperly failed to instruct the jury regarding lesser included offenses of the crimes charged in counts 1 and 2, (2) that the unanimity instruction given in connection with count 3 was defective, (3) that the trial court improperly permitted him to be impeached with the circumstances surrounding his prior felony conviction, and (4) that he received ineffective assistance of counsel. For the reasons discussed below, we conclude that he has shown no reversible error.

A. *Instructions Regarding Lesser Included Offense*

Appellant contends the trial court engaged in prejudicial error by failing to instruct the jury regarding contributing to the delinquency of a minor (§ 272, subd. (a)(1)) as a lesser included offense of human trafficking of a minor for a sex act

8

(§ 236.1, subd. (c)(1)), as charged in count 1, and pandering by procuring a minor 16 years of age or older (§ 266i, subd. (b)(1)), as charged in count 2. As explained below, we disagree.

### 1. *Governing Principles*

Appellant did not request instructions on lesser included offenses. Nevertheless, the trial court is obligated to instruct sua sponte on lesser included offenses that the evidence tends to prove. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155 (*Breverman*).) For purposes of this rule, courts apply the so-called "accusatory pleading" test, which "looks to whether ""the charging allegations of the accusatory pleading include language describing the [charged] offense in such a way that if committed as specified [the candidate] lesser offense is necessarily committed.""" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1035, quoting *People v. Lopez* (1998) 19 Cal.4th 282, 288-289.) The court must instruct on any lesser included offense for which there is substantial evidence to support a conviction (*Breverman*, *supra*, 19 Cal.4th at p. 162), but not if the pertinent evidence is "minimal and insubstantial" (*People v. Springfield* (1993) 13 Cal.App.4th 1674, 1680). "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*People v. Moye* (2009) 47 Cal.4th 537, 556.) When substantial evidence supports an instruction on a lesser included offense, the failure to so instruct is assessed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Breverman, supra,* at pp. 148-149.)

### 2. *Lesser Included Offense*

We begin by examining whether the offenses charged in counts 1 and 2 necessarily included the offense of contributing to the delinquency of a minor, as

9

set forth in section 272, subdivision (a)(1). Under that statute, it is a misdemeanor to cause, encourage, or contribute to the dependency or delinquency of a minor, that is, to render the minor subject to the jurisdiction of the juvenile court under sections 300, 601, or 602 of the Welfare and Institutions Code.[2]

The offenses alleged in counts 1 and 2 address the participation of minors in prostitution. Count 1 charged appellant with human trafficking of a minor for a sex act, as set forth in section 236.1, subdivision (c)(1). Under that statute, it is a felony to "cause[], induce[], persuade[], or attempt[s] to cause" a minor to "engage in a commercial sex act," with an intent to violate enumerated statutes, including sections 266h, 266i, and 267.[3] To the extent those statutes address victims who are minors, they proscribe pimping (§ 266h), pandering (§ 266i), and abduction for the purpose of prostitution (§ 267), and are violated regardless of whether the

---

[2]     Subdivision (a)(1) of section 272 states: "Every person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 18 years to come within the provisions of [s]ection 300, 601, or 602 of the Welfare and Institutions Code or which act or omission contributes thereto, or any person who, by any act or omission, or by threats, commands, or persuasion, induces or endeavors to induce any person under the age of 18 years or any ward or dependent child of the juvenile court to fail or refuse to conform to a lawful order of the juvenile court, or to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend to cause that person to become or to remain a person within the provisions of section 300, 601, or 602 of the Welfare and Institutions Code, is guilty of a misdemeanor . . . ."

[3]     Subdivision (c)(1) of section 236.1 states in pertinent part: "Any person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of the commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of [s]ection 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking."

10

defendant reasonably believed that the victim was not a minor. (*People v. Branch* (2010) 184 Cal.App.4th 516, 522 [§§ 266h, 266i]; *People v. Dolan* (1892) 96 Cal. 315, 320-321 [§ 267].) Similarly, a mistake regarding the victim's age is not a defense regarding a violation of section 236.1. (§ 236.1, subd. (f).)

Count 2 specifically charged appellant with pandering by procuring a minor over the age of 16 years, as specified in section 266i, subdivision (b)(1). That statute establishes that it is a felony to procure a minor of 16 years or older for purposes of prostitution (§ 266i, subds. (a)(1), (b)(1)).

Under the accusatory pleading test, counts 1 and 2 encompassed the offense of contributing to the delinquency of a minor as lesser included offenses. Because count 2 described L.D. as "a minor over age 16," the pandering offense charged in that count necessarily included contributing to the delinquency of a minor. (*People v. Mathis* (1985) 173 Cal.App.3d 1251, 1254-1255, 1257 (*Mathis*), capitalization omitted.) The same is true of count 1. The charging allegations under count 1 state that L.D. was less than 18 years of age when appellant violated section 236.1 by causing or inducing her to engage a commercial sex act, as defined in sections 266h, 266i, and 267. Subdivision (b)(2) of Welfare and Institutions Code section 300 provides that children are subject to the jurisdiction of the juvenile court when they are sexually trafficked, as described in section 236.1, and their parents have not protected them. Accordingly, under count 1, the misconduct alleged against appellant necessarily rendered L.D. subject to the jurisdiction of the juvenile court. As respondent acknowledges, the charged offense thus included contributing to the delinquency of a minor as a lesser included offense.

### 3. *No Duty to Instruct*

We turn to whether the trial court was obliged to instruct the jury regarding contributing to the delinquency of a minor. Generally, the court need not instruct on a lesser included offense when the defendant completely denies the charged offense, and no evidence reasonably supports the inference that the defendant committed only the lesser included offense. (*People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1019-1020.) That is the case here. As explained below, the jury heard only two versions of appellant's relationship with L.D., neither of which supported an instruction regarding contributing to the delinquency of a minor.

The prosecution's account of appellant's relationship with L.D. relied primarily on L.D. herself, who testified that despite appellant's knowledge that she was 16 years old, he drove her to Los Angeles, where he put her to work as a prostitute, and used violence to regulate her conduct. The testimony, if credited by the jury, necessarily established the offenses charged in counts 1 and 2, each of which requires as an element a specific intent to induce someone to engage in illegal sex acts. (*People v. Zambia* (2011) 51 Cal.4th 965, 980 [under section 266i, pandering is a specific intent crime]; *Mathis*, *supra*, 173 Cal.App.3d at p. 1256 [same]; see *In re M.D.* (2014) 231 Cal.App.4th 993, 1003 [under section 236.1, human trafficker must act "with the intent to effect or maintain a violation" of enumerated statutes specifying sex crimes].)

Appellant's account contradicted L.D.'s but did not support an instruction on contributing to the delinquency of a minor, as set forth in section 272. Generally, a person unrelated to a minor who is "simply present" when the minor engages in misconduct does not commit the offense, absent a duty of care or evidence that the person caused or contributed to the misconduct. (*Ronald M. v. White* (1980) 112

12

Cal.App.3d 473, 476 (*Ronald M*.) [juveniles who were "simply present" with intoxicated minor driving car did not violate section 272, as there was no evidence they supplied alcohol to minor]; *In re Jose O.* (2014) 232 Cal.App.4th 128, 133-134 [juvenile who socialized with minor, was present while she was intoxicated, and fled with her when she was pursued did not violate section 272 because there was no evidence he contributed to, or caused, her misconduct]; cf. *Williams v. Garcetti* (1993) 5 Cal.4th 561, 572-575 [parents contravene section 272 when they are criminally negligent regarding their children's misconduct].)

According to appellant's testimony, he was "simply present" while L.D. worked as a prostitute (*Ronald M.*, *supra*, 112 Cal.App.3d at 476). She allegedly told him that she was 18 "going on 19." At her request, he permitted her to accompany him to Los Angeles, where he attended solely to his own affairs. Because L.D. had left her home and had little money, he initially bought her some clothes and personal items, and paid for her motel room, but she later repaid him. He also sometimes drove her to various places. He acknowledged that at some point he learned from her text messages that she was engaged in prostitution, but denied any involvement in that activity. He maintained that he never asked L.D. to work as a prostitute, never managed or directed her, never sought to share in her earnings, and never hit or threatened her.

Appellant's testimony, taken as a whole, does not support an instruction on contributing to the delinquency of a minor. Nor does the record disclose a reasonable basis for the jury to credit parts of L.D.'s and appellant's accounts, while rejecting others, in a manner that might support an instruction on contributing to the delinquency of a minor. As noted above (see pt. A.2. of the Discussion, *ante*), appellant's liability for the offenses charged in counts 1 and 2 did not hinge on

13

whether he reasonably believed that L.D. was a minor. Nothing in the record otherwise suggests how the jury might reasonably have concluded that appellant was more than "simply present" with respect to L.D.'s prostitution -- and thus culpable of contributing to the delinquency of a minor -- but lacked the specific intent establishing the offenses charged in counts 1 and 2, that is, the intent to have her work as a prostitute. Accordingly, the trial court was not obliged to instruct the jury regarding contributing to the delinquency of a minor as a lesser included offense under counts 1 and 2. (*People v. Wyatt* (2012) 55 Cal.4th 694, 703-704 [trial court did not err in failing to instruct on lesser included offense when jury heard different accounts of incident from prosecution and defendant, neither of which supported instruction].)[4]

### 4. *No Prejudice*

Furthermore, even had the trial court been required to instruct the jury regarding contributing to the delinquency of a minor, we would discern no prejudice from that error. In this context, review for prejudice "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different

---

[4] We recognize that the trial evidence indisputably showed that appellant engaged in sex with L.D. in Richmond, prior to their trip to Los Angeles. Although such conduct potentially constitutes contributing to the delinquency of a minor when the defendant lacks a reasonable belief that the minor is 18 years or older (see *People v. Atchison* (1978) 22 Cal.3d 181, 183), neither count 1 nor count 2 charged any crime relating to that incident. Accordingly, the incident did not support an instruction regarding contributing to the delinquency of a minor.

outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Breverman*, *supra*, 19 Cal.4th at p.177.)

Under that standard, any failure to instruct regarding lesser included offenses was harmless, as the evidence establishing appellant's guilt under counts 1 and 2 was compelling. The prosecution's evidence regarding the offenses charged in counts 1 and 2 was very strong, even though it relied primarily on a single witness, namely, L.D. Her account of appellant's role in her prostitution was corroborated by the prosecution's evidence regarding the November 2012 incident involving Bolden; her account of the events preceding the unsuccessful attempt to arrest appellant on September 27, 2013 was corroborated by testimony from several law enforcement officials.

In contrast, appellant's evidence regarding his relationship with L.D. was weak, as his testimony was subject to impeachment on some matters, and was manifestly implausible with respect to several others. During appellant's cross-examination, the prosecution presented excerpts from a police interview following his arrest. In the interview, appellant stated that he first met L.D. in Los Angeles, not the "Bay area." When examined regarding L.D.'s numerous text messages to him detailing sexual services she had provided and problems with customers, appellant said that she was merely "letting [him] know what she was doing and [that] she was safe." In connection with appellant's text message to L.D. stating "I want you to be . . . my ho," appellant said that his remark was intended just "to get her to pick up the phone." Appellant further maintained that on September 27, 2013, after agreeing to meet L.D. at a restaurant, he decided not to let her enter his car, and noticed no police cars pursuing him as he drove away from the restaurant,

15

as "[he] was listening to music." On this record, the failure to instruct the jury regarding contributing to the delinquency of a minor was harmless, as there is no reasonable likelihood that those instructions would have resulted in an outcome more favorable to appellant. In sum, appellant has shown no instructional error relating to lesser included offenses.

### B. *Unanimity Instruction*

Appellant contends the trial court provided a defective unanimity instruction relating to count 3, which charged appellant with pimping with respect to Bolden (§ 266h, subd. (a)). As discussed below, he has shown no reversible error.

### 1. *Governing Principles*

The principles applicable to unanimity instructions stem from the "'constitutionally based concept that "the defendant is entitled to a verdict in which 12 jurors concur, beyond a reasonable doubt, as to each count charged."'" "'From this constitutional underpinning, four principles have emerged.'" (*People v. Jenkins* (1994) 29 Cal.App.4th 287, 298 (*Jenkins*), quoting *People v. Melendez* (1990) 224 Cal.App.3d 1420, 1427-1428 (*Melendez*), disapproved on another ground in *People v. Majors* (1998) 18 Cal.4th 385, 408.)

"'First, if the prosecution shows several acts and each act is a separate offense, a unanimity instruction is required.'" (*Jenkins*, *supra*, 29 Cal.App.4th at p. 298, quoting *Melendez*, *supra*, 224 Cal.App.3d at p. 1428.) Second, no unanimity instruction is required when the case falls within so-called "'continuous course of conduct exception.'" (*Jenkins*, *supra*, at p. 299.) That exception arises

16

when the pertinent acts are so closely connected, by law or fact, "that they form part of one and the same transaction, and thus one offense. [Citation.]" (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224 (*Thompson*).) Third, "'the jury is not required to agree on the specific 'theory' of guilt. [Citation.]'" (*Jenkins*, *supra*, at p. 299, quoting *Melendez*, *supra*, at p. 1432.) That exception is applicable when the evidence shows a single incident of misconduct, but the statute establishing an offense specifies two or more distinct ways in which the offense can be committed. (*People* v. *Sutherland* (1993) 17 Cal.App.4th 602, 618 (*Sutherland*).) Fourth, the failure to give a unanimity instruction is subject to harmless error analysis (see *Jenkins*, *supra*, at p. 298), although there is a division of opinion whether prejudice is assessed under the test in *Watson* or the more stringent test for federal constitutional error in *Chapman v. California* (1967) 386 U.S. 18, 24 (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576 (*Hernandez*)).

Subdivision (a) of section 266h provides: "[A]ny person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, . . . or who solicits or receives compensation for soliciting for the person, is guilty of pimping, a felony . . . ." The statute "can be violated in either of two basic ways: (1) by *deriving support* from the earnings of another's act of prostitution or (2) by *soliciting.*" (*People v. McNulty* (1988) 202 Cal.App.3d 624, 630; see *People v. Smith* (1955) 44 Cal.2d 77, 78-81.) Under the statute, pimping may be predicated on a single act of prostitution. (*People v. Jackson* (1980) 114 Cal.App.3d 207, 209.) In addition, pimping may be charged as a "course of conduct" crime in which an entire course of conduct is subject to punishment as a single violation of the statute. (See *Thompson*, *supra*, 160 Cal.App.3d at pp. 224-226.) In such cases, no unanimity

17

instruction is required if the defendant's acts, as established at trial, constitute "'one and the same transaction . . . .'" (*Jenkins*, *supra*, 29 Cal.App.4th at p. 299, quoting *Thompson*, *supra*, 160 Cal.App.3d at p. 224.)

### 2. *Underlying Proceedings*

The original and amended informations alleged under count 3 that "[o]n or about November 12, 2012," appellant engaged in pimping with respect to Bolden by deriving support from her prostitution and by receiving compensation for soliciting for her. During opening statements, the prosecutor described appellant's November 12, 2012 arrest in El Monte, noting that police discovered that appellant had approximately $900 in cash while Bolden had less than $5. The prosecutor characterized count 3 as "that pimping charge back in El Monte."

Later, in instructing the jury regarding count 3, the trial court stated: "To prove that [appellant] is guilty of [pimping], the People must prove that: [¶] 1. [Appellant] knew that . . . Bolden was a prostitute; [¶] 2A. The money that [] Bolden earned as a prostitute supported [appellant], in whole or in part; [¶] OR [¶] 2B. [Appellant] asked for payment or received payment for soliciting prostitution customers for . . . Bolden."

The court further instructed the jury: "The People have presented evidence of more than one act to prove the defendant committed the offenses charged in counts 1, 2, and 3. The alternative acts are designated by the use of the word "OR" when the elements of the offenses are listed. You must not find [appellant] guilty unless you all agree that the People have proved beyond a reasonable doubt that the

defendant committed at least one of these acts and you all agree on which act he committed."

In addressing count 3 in closing arguments, the prosecutor focused exclusively on the November 12, 2012 incident, described the evidence relating to that incident, and argued that it showed appellant was then engaged in pimping. After describing appellant's activities during that incident, the prosecutor underscored that when appellant and Bolden were arrested, appellant had approximately $900 in cash while Bolden had less than $5.

Characterizing count 3 as "something that happened in 2012," defense counsel contended the prosecution had failed to prove that appellant derived support from Bolden's prostitution, arguing there was no evidence that Bolden supplied the $900 in appellant's possession when he was arrested. Defense counsel also noted that no money was found in appellant's car when he was arrested again in 2013.

### 3. *Analysis*

Appellant contends the unanimity instruction was defective with respect to count 3. He maintains that under the instructions relating to that count, the only proper basis for a verdict of guilt was a determination that appellant had derived support from Bolden's prostitution, and argues there was no evidence that appellant solicited customers for Bolden. He further argues the trial evidence disclosed two separate potential acts of support from Bolden's prostitution during the November 12, 2012 incident. Aside from appellant's possession of approximately $900 when arrested, there was evidence that appellant was then Bolden's guest in the motel. As appellant notes, he testified that he usually stayed with Bolden when he visited

19

her.  Appellant thus argues that the unanimity instruction improperly failed to inform the jury that it must unanimously agree on the precise November 12, 2012 act of support, namely, the receipt of cash from Bolden or the benefit he derived from being a guest in her motel.  As explained below, appellant has shown no prejudicial defect in the unanimity instruction.

Generally, the adequacy of any instruction given must be judged in the context of all the instructions.  (5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 747, pp. 1164-1166.)  Thus, an instruction is not assessed in isolation, but must be viewed in the context of the overall charge.  (*People v. Reliford* (2003) 29 Cal.4th 1007, 1013.)  When an instruction is potentially ambiguous or misleading, the instruction is not error unless there is a reasonable likelihood that the jurors misunderstood or misapplied the pertinent instruction.  (*Ibid.*; *People v. Avena* (1996) 13 Cal.4th 394, 416-417.)

Here, the central premise of appellant's contention -- namely, that the jury received inadequate guidance regarding the precise act underlying count 3 -- fails for two distinct reasons.  First, no unanimity instruction is required when the prosecutor specifies the particular act underlying a charged crime.  (*Hernandez, supra*, 217 Cal.App.4th at p. 559; *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292.)  Thus, the necessity for a unanimity instruction is obviated when the prosecutor clearly identifies the act underlying a charged crime in the opening and closing arguments.  (*Jantz, supra*, 137 Cal.App.4th at pp. 1292-1293.)  That is what occurred here:  during the opening statement and closing arguments, the prosecutor clearly predicated count 3 solely on appellant's receipt of cash from Bolden, as he referred to appellant's possession of approximately $900, and made no reference to appellant's status as Bolden's guest.

Second, even if the prosecutor had not identified the precise act of support, no unanimity instruction would have been required regarding the acts of support, as they "form[ed] part of one and the same transaction, and thus one offense. [Citation.]" (*Thompson*, *supra*, 160 Cal.App.3d at p. 224.)  In *People v. Lewis* (1978) 77 Cal.App.3d 455, 458-461, the defendant was charged with four counts of pimping predicated on four discrete acts of support separated by intervals of several months.  The appellate court concluded that because the evidence showed that the acts arose from the defendant's ongoing relationship with a single prostitute, he could be charged with only a single count of pimping because there was "but one continuous criminal act . . . ."  The two potential acts of support at issue here thus formed "one and the same transaction," as they occurred on the same day and involved only Bolden.  For that reason, no unanimity instruction was required regarding the two acts.  (See *People v. Leonard* (2014) 228 Cal.App.4th 465, 471, 491-492 [no unanimity instruction required in action charging defendant with two counts of pandering regarding two prostitutes, even though he engaged in many acts intended to control them over a period of time, as the evidence established "a continuous course of threats and intimidation"].)

We further conclude that the unanimity instruction was not prejudicially defective in characterizing the "acts" underlying count 3 as those described as "2A" and "2B" in the instructions relating to count 3.  Because 2A and 2B merely described the alternative "theories" of pimping set forth in section 266h, subdivision (a), that is, the ways in which pimping may be committed, no unanimity instruction was required with respect to those alternative theories.  (See *Sutherland*, *supra*, 17 Cal.App.4th at pp. 610, fn. 2, 618 [when there is single count of forgery and the evidence shows only a single instrument, no unanimity instruction is

21

required regarding the two theories specified in the forgery statute (§ 470), which provides that forgery may be committed by "forging" a check -- that is, creating a falsified check with the intent to defraud -- or "uttering" it -- that is, passing it to a third party as bona fide].)

In our view, the specification of the alternative theories was harmless. The instructions regarding count 3, together with the prosecutor's remarks and the unanimity instruction, focused the jury's attention on the acts of support on November 12, 2012, and directed the jurors to make a *unanimous* finding that appellant had derived support from Bolden's prostitution, or alternatively, a *unanimous* finding that appellant had solicited customers for Bolden. That directive could not have influenced the jury's determination in any manner unfavorable to appellant, however, because -- as appellant's opening brief acknowledges -- there was no evidence that appellant solicited customers for Bolden on November 12, 2012.[5] Indeed, the jury was instructed that "[s]ome of the[] instructions [might] not apply depending on [its] findings . . . ." The specification of the alternative theories was therefore harmless, even if assessed under the stringent test applicable to federal constitutional error. In sum, appellant has failed to show a prejudicial defect in the unanimity instruction.

C. *Impeachment By Circumstances of Robbery Conviction*

Appellant contends the trial court improperly permitted him to be impeached with the circumstances of his prior conviction. In 1999, appellant pleaded guilty to

---

[5] For the first time on appeal, appellant's reply brief suggests that the trial evidence supported the reasonable inference that he solicited for compensation. He has forfeited any contention of error predicated on that suggestion. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.)

robbery, and admitted the truth of an accompanying gun use allegation (§ 12022.5). During appellant's testimony at trial, the prosecutor sought leave to impeach him with the robbery conviction and the related gun use. Over an objection, the trial court granted that request. Later, on direct examination, appellant testified that in 1999, he suffered a conviction for "a robbery with a gun." Appellant asserts no challenge to the admission of his robbery conviction, but argues that the trial court engaged in reversible error by admitting the gun use relating to that crime. We disagree.

In 1982, the electorate enacted the "'Right to Truth-in-Evidence'" provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f), par. (2)) by approving Proposition 8. (*People v. Lazlo* (2012) 206 Cal.App.4th 1063, 1069.) In *People v. Castro* (1985) 38 Cal.3d 301, 317, our Supreme Court held that under that provision, a prior felony conviction involving moral turpitude -- that is, a general readiness to do evil -- is admissible for impeachment purposes. The rationale underlying that principle is that the commission of a felony involving moral turpitude provides a basis for inferring that the felon "is more likely to be dishonest than a witness about whom no such thing is known." (*Id*. at p. 315.) Subsequently, the court identified robbery as a crime of moral turpitude, noting that its commission manifests a readiness to do evil because it involves "the taking of property from the person of another, against his will, by force or fear." (*People v. Collins* (1986) 42 Cal.3d 378, 395.)

Admission of a prior felony conviction for impeachment purposes is regulated by Evidence Code section 788, which states: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony

. . . ." Before and after the enactment of Proposition 8, courts have interpreted Evidence Code section 788 to limit the evidence of a prior felony conviction to the name or type of crime and the date and place of conviction. (*People v. Allen* (1986) 42 Cal.3d 1222, 1270; *People v. Shea* (1995) 39 Cal.App.4th 1257, 1267; *People v. Heckathorne* (1988) 202 Cal.App.3d 458, 462.) Thus, "[t]he scope of inquiry when a criminal defendant is impeached with evidence of a prior felony conviction does not extend to the facts of the underlying offense." (*Heckathorne*, *supra*, 202 Cal.App.3d at p. 462.) The erroneous admission of those facts is examined for prejudice under *Watson*. (*Id*. at pp. 463-464.)

On appeal, respondent contends the trial court's ruling was not erroneous, arguing that *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 and its progeny rendered the gun use relating to appellant's robbery admissible. It is unnecessary to address that contention, however, because the gun use evidence was harmless, even though count 1 was accompanied by an allegation that appellant used force or fear in trafficking L.D. for a sex act. Because appellant's robbery conviction was properly admitted, the jury was unavoidably informed that appellant had engaged in a prior crime involving force or fear. The particular way in which appellant had generated that force or fear -- namely, by a gun -- is not reasonably likely to have influenced the jury regarding the "force [or] fear" allegation accompanying count 1, as the prosecution offered no evidence suggesting that appellant used a gun against L.D. In sum, appellant has shown no reversible error relating to his impeachment.


D. *Ineffective Assistance of Counsel*

Appellant contends his defense rendered ineffective assistance by conceding in closing argument that the prosecution had proved beyond a reasonable doubt that

24

he was guilty of the offenses charged in count 1 and 2, which related to L.D. As explained below, we reject that contention.

"In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Jennings* (1991) 53 Cal.3d 334, 357.)

We find guidance on appellant's contention from *People v. Mayfield* (1993) 5 Cal.4th 142, 163, in which the defendant was charged with two counts of first degree murder. The defendant did not testify in the guilt phase of trial. (*Id*. at p. 166.) During the closing arguments of that phase of the trial, defense counsel conceded that one of the killings was a murder, but argued that the other killing was accidental. (*Id*. at pp. 166, 177.) Our Supreme Court rejected a contention that defense counsel's concession constituted ineffective assistance of counsel, stating: "Our review . . . does not persuade us that the closing argument amounted to an abandonment of defendant. To the extent defendant is arguing that it is necessarily incompetence for an attorney to concede his or her client's guilt of murder, the law is otherwise. [Citation.] The record does not show that counsel ignored any express wish on defendant's part to present an active defense with regard to that count. [Citation.] To the extent defendant is arguing it was an incompetent tactical choice, we disagree. It was not unreasonable to seek to avoid the death penalty by

25

seeking a conviction on one count of second degree murder and one count of involuntary manslaughter on a plausible theory, when the prosecution's evidence put defendant at grave risk of two first degree murder convictions. . . . [C]andor may be the most effective tool available to counsel." (*Id.* at p. 177.)

Also instructive is *People v. Lucas* (1995) 12 Cal.4th 415. There, the defendant was charged with two counts of first degree murder and several other crimes. (*Id.* at p. 433.) During the guilt phase of the trial, the prosecution presented evidence that the defendant's blood was on the murder weapon. (*Id.* at p. 447.) The defendant testified that he was intoxicated at the time of the murders, and could not recall where he was or what he had done. (*Id.* at pp. 434-435.) In his closing argument, defense counsel admitted that the defendant had probably committed the murders, but maintained that the defendant's intoxication negated the mens rea required for premeditated murder. (*Id.* at p. 446.) In rejecting the defendant's contention that the argument constituted ineffective assistance of counsel, our Supreme Court stated that "it is not necessarily incompetent for an attorney to concede his or her client's guilt of a particular offense." (*Id.* at p. 446.) The court concluded that the argument was not "an incompetent tactical choice" in light of the prosecution's evidence, noting that "'good trial tactics'" may require "'complete candor.'" (*Id.* at p. 447, quoting *People v. Wright* (1990) 52 Cal.3d 367, 415, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

Here, the prosecution presented considerable evidence in support of counts 1 and 2 relating to L.D., including a text message in which appellant stated that he wanted her to remain with him and be his "ho." Following the presentation of the prosecution's evidence, appellant decided to testify on his own behalf, against the advice of his counsel. As discussed above (see pt. A.4. of the Discussion, *ante*),

appellant's testimony regarding L.D. was subject to impeachment, and was implausible on many matters.

At the beginning of defense counsel's closing argument, he underscored the instructions regarding reasonable doubt and the evaluation of witness credibility, arguing that appellant's 1999 robbery conviction did not establish the "force [or] fear" allegation accompanying count 1, which concerned L.D. Counsel then disclosed what he characterized as "good news" for the jury, namely, that "we" conceded that the prosecution had established beyond a reasonable doubt the two counts relating to L.D. Counsel remarked that it would "be intellectually dishonest" to argue for a contrary position. Counsel nonetheless urged the jury to reject the "force [or] fear" allegation relating to count 1, arguing that appellant's testimony that he believed L.D. was 18 and that he never subjected her to force or threats was credible. Counsel also argued that the prosecution had failed to establish count 3 concerning Bolden.

Appellant contends the concession of guilt regarding counts 1 and 2 constituted an incompetent tactical choice because it effectively informed the jury that appellant had lied throughout his testimony. We disagree. As explained above (see pt. A.4 of the Discussion, *ante*), appellant testified that he was a bystander to L.D.'s prostitution. In view of the deficiencies in that testimony, it was reasonable for defense counsel to conclude that he could offer no argument likely to enhance its credibility as a whole, and that his best course of action was to emphasize the plausibility of the portions relating to the "force [or] fear" allegation.

Furthermore, even if the argument had violated professional norms, we discern no prejudice. As explained above (see pt. A. of the Discussion, *ante*), the prosecution's evidence was compelling, and appellant's testimony was of dubious

credibility. It is not reasonably likely that appellant would have achieved a more favorable outcome had defense counsel urged the jury to credit that testimony in its entirety. In sum, appellant has shown no ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

28