Filed 11/24/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.D., <br><br> Defendant and Appellant. | A139888 <br><br> (Contra Costa County <br> Super. Ct. No. J1300902) |

A minor appeals from an order of wardship following a finding that she committed the crime of loitering with the intent to commit prostitution. She contends that the juvenile court erred in denying her in limine motion to exclude evidence under Evidence Code section 1161 on the ground that she committed the alleged commercial sexual act as a result of being a victim of human trafficking.[1] Alternatively, she contends that she

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 3 of the Discussion.

[1] Evidence Code section 1161, subdivision (a) provides as follows: "Evidence that a victim of human trafficking, as defined in Section 236.1 of the Penal Code, has engaged in any commercial sexual act as a result of being a victim of human trafficking is inadmissible to prove the victim's criminal liability for the commercial sexual act." As relevant in this case, Penal Code section 236.1, subdivision (c) provides that "[a]ny person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking."

All further statutory references are to the Evidence Code unless otherwise noted.

received ineffective assistance of counsel in presenting her motion and that two conditions of her probation are unconstitutionally vague. We find no error in the denial of her motion and no merit in her alternative arguments. We shall therefore affirm the court's orders.

### FACTUAL AND PROCEDURAL HISTORY

On July 29, 2013, a petition was filed pursuant to Welfare and Institutions Code section 602 alleging that the minor had committed a misdemeanor violation of Penal Code section 653.22, loitering with intent to commit prostitution.

Prior to the jurisdictional hearing, the minor filed a motion in limine to exclude evidence of her alleged commercial sexual activity pursuant to Evidence Code section 1161, subdivision (a) on the ground that she was a victim of human trafficking. The minor called two witnesses to testify in support of her motion.

Investigator Mark Robison of the Concord Police Department Special Victims Unit testified that on July 26, 2013, he was on duty driving an unmarked vehicle with another officer conducting surveillance in an area of Concord known for its high level of prostitution-related activity. At approximately 7:30 p.m., he saw two females, later identified as the minor and Shiquenta Antonio, walking side by side down Galindo Street toward Laguna Street. The minor was 16 years old, and Antonio was an adult. They were both wearing tight clothing with their midsections exposed, and they appeared to be talking to each other. Robison drove past them and parked in a lot on Laguna Street. After five minutes, he saw the two females walking down Laguna Street, approximately 30 feet apart with the minor following Antonio. Robison saw Antonio throw her hands up in the air and wave, and then both females walked slowly across the street. Antonio walked into a parking lot after a truck pulled into the lot, while the minor continued to walk down Laguna Street about 30 feet back. The truck then left the parking lot, Antonio walked out of the parking lot, and both she and the minor continued walking down the street approximately 30 feet apart. Robison saw the minor slap an empty plastic bottle against her stomach as she walked. When Antonio arrived at the corner of Laguna Street and Ellis Street, she waited until the minor caught up with her. The minor and Antonio

2

then walked down Ellis Street to an apartment stairway, where Antonio sat on the steps and the minor stood next to her. At this point, Robison asked two other officers, Sergeant Price and Officer Cain, to contact the two females. Robison observed the minor standing next to the passenger side of a different pickup truck in the parking lot of the apartment complex when Sergeant Price contacted her. The minor was talking to the driver of the truck. The truck left the lot and the driver was contacted by the police further down the street. Robison confirmed that the minor and Antonio were always within each others' visual range and seemed like they were acting together the entire time he observed them. The minor was arrested and Antonio was arrested for loitering with intent to commit prostitution and for pimping. At the time of the in limine motion hearing, the investigation into the charges against Antonio was still ongoing.

Sergeant Stephen Price of the Concord Police Department Special Enforcement Team testified that on July 26, 2013, around 7:30 p.m., he was participating in a joint operation with the special victims unit directed toward street prostitution. At the direction of Robison, Price contacted the minor and Antonio. Price and his partner drove to the area designated by Robison and saw two Black females who matched Robison's description. Antonio was seated on steps near the sidewalk on Ellis Street, and the minor was further back in the parking lot of the building on the corner of Ellis and Laguna, approaching the passenger side of a truck that was facing Ellis Street.

At the conclusion of the hearing, the court found there was insufficient evidence that the minor was a victim of human trafficking under the definition set forth in Penal Code section 236.1 and denied the minor's motion.

At the contested jurisdictional hearing, Officers Robison and Price repeated their prior testimony regarding the events and circumstances they observed leading to the minor's arrest. Price also testified that prostitutes frequent the area of Laguna and Ellis Streets in Concord because it is a safe area to work. The area is a couple of blocks from a BART station, and a majority of prostitutes come from outside the area. According to Robison, for the purposes of attracting men, prostitutes in the area of Laguna Street and Ellis Street will wear revealing clothing showing their midsections and low cut tops, tight

3

shorts, or skirts. They choose that area because it is easy to get there by BART and it has a high population density so they can make a lot of money. Robison also testified that after the minor was arrested and read her *Miranda*[2] rights, she told him she had been a prostitute since March.

At the conclusion of the jurisdictional hearing, the court found the allegation that the minor loitered with intent to commit prostitution to be true. At the dispositional hearing, the court declared the minor a ward of the juvenile court, placed her on probation and ordered her to reside in her father's home. Among other probation conditions, the court ordered her to attend school regularly and "use [her] best efforts in doing well." The court ordered her "not to be on any school campus unless you are enrolled there, or unless you are attending events that the probation officer has approved you attend in advance."

The minor timely filed a notice of appeal.

## DISCUSSION

### 1. *Evidence Code section 1161*

Section 1161 was enacted as part of the "Californians Against Sexual Exploitation Act" (CASE Act), which was approved by the voters in November 2012. (Prop. 35, § 4, approved Nov. 6, 2012, eff. Nov. 7, 2012). The following findings, among others, are included in the CASE Act: "The people of the State of California find and declare: [¶] 1. Protecting every person in our state, particularly our children, from all forms of sexual exploitation is of paramount importance. [¶] 2. Human trafficking is a crime against human dignity and a grievous violation of basic human and civil rights. Human trafficking is modern slavery, manifested through the exploitation of another's vulnerabilities. [¶] 3. Upwards of 300,000 American children are at risk of commercial sexual exploitation, according to a United States Department of Justice study. Most are enticed into the sex trade at the age of 12 to 14 years old, but some are trafficked as young as four years old. Because minors are legally incapable of consenting to sexual

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

4

activity, these minors are victims of human trafficking whether or not force is used." (Prop. 35, § 2, approved Nov. 6, 2012, eff. Nov. 7, 2012.) The stated purpose and intent of the Act is, among other things: "1. To combat the crime of human trafficking and ensure just and effective punishment of people who promote or engage in the crime of human trafficking. [¶] 2. To recognize trafficked individuals as victims and not criminals, and to protect the rights of trafficked victims." (Prop. 35, § 3, approved Nov. 6, 2012, eff. Nov. 7, 2012.)

The minor contends the court erred by placing the burden of proof on her to establish she was a victim of human trafficking and alternatively, that even if the burden was hers, the evidence she presented was sufficient to meet her burden.

*Burden of Proof*

Section 405 provides the evidentiary rules that are applicable when a party moves to withhold evidence from the jury because it is unreliable or because, as in this case, public policy requires its exclusion.[3] "Under Section 405, the judge first indicates to the parties who has the burden of proof and the burden of producing evidence on the disputed issue as implied by the rule of law under which the question arises. . . . [¶] After the judge has indicated to the parties who has the burden of proof and the burden of producing evidence, the parties submit their evidence on the preliminary issue to the judge. If the judge is persuaded by the party with the burden of proof, he finds in favor of that party in regard to the preliminary fact and either admits or excludes the proffered evidence as required by the rule of law under which the question arises. Otherwise, he finds against that party on the preliminary fact and either admits or excludes the proffered evidence as required by such finding." (Assem. Com. on Judiciary, com. on § 405 (1965 Reg. Sess.) reprinted at 29B, pt. 1B, West's Ann. Evid. Code (2011 ed.) foll. § 405, pp. 41–42.)

---

[3] Section 405, subdivision (a) provides: "When the existence of a preliminary fact is disputed, the court shall indicate which party has the burden of producing evidence and the burden of proof on the issue as implied by the rule of law under which the question arises. The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises."

No published authority has directly addressed which party bears the burden of proof under section 1161. Typically, the party seeking to exclude otherwise relevant testimony on public policy grounds bears the burden of proof on any foundational issues of fact. (See, e.g., *People v. Badgett* (1995) 10 Cal.4th 330, 364 ["The claimant of the marital privilege for confidential communications has the burden of proving, by a preponderance of the evidence, the facts necessary to sustain the claim."].) Likewise, under section 500, "[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

"In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact. In determining the incidence of the burden of proof, 'the truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations.' " (Cal. Law Revision Com. com. 29B, pt. 1B, West's Ann. Evid. Code (2011 ed.) foll. § 500, p. 310.) The minor argues that section 1161 warrants reallocation of the burden of proof as a matter of both procedural fairness and public policy.

The minor argues that the burden of proof should be allocated to the prosecution because the prosecution has superior access to evidence bearing on whether she was a victim of human trafficking and that whether she was such a victim is "not a fact peculiarly within [her] personal knowledge." She argues that "in a juvenile delinquency case, the government has the clear advantage in having access to the evidence of the crimes alleged against both the minor and the purported adult human trafficker. From the start of the case, the prosecution has the initial access to the police reports and witnesses to support its case." We disagree. The facts necessary to establish that the minor was a victim of human trafficking are in fact "peculiarly" within *her* personal knowledge. She has the most knowledge as to the circumstances that led her to engage in prostitution,

6

who—if anyone—induced or persuaded her to do so, and to whom—if anyone—she is reporting or delivering the proceeds of her prostitution activity. (See, e.g., *People v. Mower* (2002) 28 Cal.4th 457, 477 [In applying medicinal marijuana defense, facts that defendant "was a 'patient' or 'primary caregiver,' that he or she 'possesse[d]' or 'cultivate[d]' the 'marijuana' in question 'for the personal medical purposes of [a] patient,' and that he or she did so on the 'recommendation or approval of a physician' " are "peculiarly within a defendant's personal knowledge."].)

The minor's argument that public policy supports the reallocation of the burden of proof is also unpersuasive. The minor argues, "California voters passed the CASE Act with the intent to shield vulnerable victims, especially minors, from exploitation, and to strengthen laws that bolster victims' rights. [Citation.] A significant aim of the CASE Act was the recognition of trafficked individuals as victims instead of offenders, shifting the law toward decriminalization. [Citation.] . . . In light of the deep concern for the welfare of minors involved in the commercial sex industry, who are legally incapable of consenting to sexual acts, it is unlikely that the voters wanted to place the onus on minors to attempt to convince the court of the often traumatizing and debasing situations they survived. There is a growing national consensus that these sexually exploited minors, who are by definition abused and often traumatized, are presumptively victims. This court should interpret the statutes derived from CASE Act in the same light and hold that when a minor is alleged to engage in acts related to commercial sex in the presence of an adult, he or she is presumed to be a victim of human trafficking. The burden of refuting that [the minor] is a victim should be placed on the district attorney."

The minor asks this court to read too much into section 1161. Nothing in the language of section 1161 suggests an intent to create an evidentiary presumption that all minors charged with committing commercial sex acts are victims of human trafficking. Although section 1161 may have the effect of exonerating a minor, the section does not create an affirmative defense that can be asserted at trial. As respondent states, "Section 1161 does not affect the illegality of commercial sex acts prohibited by statute, and it does not negate or affect the elements of any such criminal acts which must be proved by

7

the prosecution in a criminal prosecution." While it is certainly public policy to deter human trafficking, it is not public policy to encourage prostitution. Placing the burden of proof on the minor does not require the minor to establish "the often traumatizing and debasing situations they survived," as minor argues, but simply to prove that she (or he) was induced or persuaded to engage in the activity by another. As indicated above, if true, it should not be difficult for the minor to prove this fact.

Thus, we find no error in the court's decision to place the burden of proof on the minor to establish that she was a victim of human trafficking.

*Sufficiency of the Evidence*

The minor argues that, even assuming that she bore the burden of proof under section 1161, the court erred in finding that she had not sustained it. She argues, "The testimony presented at the motion in limine hearing was sufficient to prove, by a preponderance of the evidence, that [she] was a human trafficking victim, who was caused, induced and persuaded to engage in prostitution by her adult female companion, Shiquenta Antonio. Thus any evidence that [she] engaged in any commercial sexual act, present or past, as a result of being a victim of human trafficking should have been inadmissible to prove her criminal liability at the jurisdictional hearing."

Since the minor's implicit contention is that the evidence supports only a finding that she was a human trafficking victim, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

The minor suggests that the evidence shows that Antonio was leading her "on the streets in an area known for prostitution activity, while demonstrating methods for luring potential customers" and argues that "the police officers' reasonable belief that Antonio was pimping [the minor], when they arrested the older woman for that crime," further supports the inference that she was a victim of human trafficking. While this evidence

8

might have been sufficient to support a finding that she was a victim of human trafficking, it does not establish that she was a victim as a as matter of law. The evidence is also consistent with numerous other possibilities, such as that she and Antonio were merely friends, both of whom voluntarily and on their own initiatives were soliciting prostitution. Neither the fact that Antonio was somewhat older than the minor, nor that she was arrested for pimping, necessarily compels the conclusion that the minor was a victim of Antonio's trafficking. We find no error in the court's denial of minor's motion.[4]

## 2. *Ineffective Assistance of Counsel*

The minor argues that if this court finds there was insufficient evidence she was the victim of human trafficking, she was denied effective assistance of counsel because counsel failed to introduce additional evidence that she was persuaded by Antonio to go to Concord to prostitute herself. She faults counsel for not questioning the arresting officers regarding her statement, purportedly contained in the police reports, "that Antonio had bought her a BART ticket in order for her to come to Concord from Richmond to commit prostitution, telling her that she could make much more money through prostitution than she could in a regular job." She argues that a reasonably competent attorney would have presented this information at the hearing on the in limine motion and that, if this evidence had been presented, there is a reasonable probability that the juvenile court would have found that she was a human trafficking victim.

We need not evaluate the adequacy of trial counsel's performance in this case, as the minor has failed to establish that any such error was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 ["[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground

---

[4] In light of our conclusion that the court did not err in finding that minor was not a victim of human trafficking, we need not consider respondent's additional arguments that section 1161 is not applicable in juvenile delinquency proceedings or that section 1161 is applicable only in a prosecution for human trafficking.

9

of lack of sufficient prejudice, which we expect will often be so, that course should be followed."].) To determine prejudice from failure to introduce additional evidence, "it is necessary to consider *all* the relevant evidence that the [trier of fact] would have had before it if [counsel] had pursued the different path—not just the mitigation evidence [counsel] could have presented, but also the [damaging] evidence that almost certainly would have come in with it." (*Wong v. Belmontes* (2009) 558 U.S. 15, 19.)

As noted, section 1161 incorporates the definition of human trafficking found in section 236.1 of the Penal Code. Penal Code section 236.1, in turn, requires that the human trafficker cause, induce, or persuade, or attempt to cause, induce, or persuade, a minor to engage in a commercial sex act, with the intent to effect or maintain a violation of Penal Code sections 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518.[5] Of these sections, only section 266i is potentially applicable on the facts before us. Penal Code section 266i, subdivision (a)(2), provides that any person who "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute" is guilty of pandering. Thus, for the minor to be found to be a victim of human trafficking, it was necessary for her to prove that Antonio, the alleged human trafficker, persuaded or attempted to persuade her to engage in prostitution with the intent "to effect or maintain" a violation of Penal Code section 266i.

It is doubtful that the additional evidence would have been sufficient to establish an attempt to persuade or encourage the minor to engage in prostitution. That Antonio bought the minor's BART ticket does not necessarily indicate persuasion. It is clear, however, that the evidence of any purported encouragement would not be sufficient to show the encouragement was accomplished by promise, threat, violence or any device or

---

[5] Briefly, the crimes set forth in these statutes are: section 266 (procuring, assignation and seduction); section 266h (pimping); section 266i (pandering); section 266j (providing or transporting child under 16 for purpose of lewd act); section 267 (abduction for prostitution); sections 311.1 through 311.6 (all relating to pornography); and section 518 (extortion).

10

scheme. There is no suggestion of threats or violence. Antonio's alleged statement that the minor can "make much more money through prostitution than she could in a regular job" was not a promise and the purchase of a BART ticket does not amount to a device or scheme. Hence, there is no basis to believe that presenting evidence that Antonio purchased the BART ticket would have resulted in a more favorable outcome for the minor, and the minor makes no showing that there was any further evidence that might have been adduced that is likely to have affected the outcome.

### 3. *Probation Conditions*

The juvenile court imposed the following conditions of probation, among others: (1) "You must attend school regularly and obey school authorities. If you are in independent study, you must complete all of your assignments on time. You must meet with the adviser, teacher on time. Not miss any appointments. You must do well. You must use your best efforts in doing well." (2) "You are not to be on any school campus unless you are enrolled there, or unless you are attending events that the probation officer has approved you attend in advance." The minor contends that these conditions are unconstitutionally vague and must be stricken or modified.

Juvenile courts have broad discretion in establishing the conditions of probation. "The court may impose 'any . . . reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 940.) Juveniles are deemed to be more in need of guidance and supervision than adults; thus, their rights are circumscribed. (*Id.* at p. 941.) Hence, a condition of probation that would be impermissible for an adult offender may be reasonable for a minor. (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242.)

Juvenile "probation conditions may be challenged on the grounds of unconstitutional vagueness." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 750.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*In re Sheena K.* (2007) 40

11

Cal.4th 875, 891.) "California appellate courts have found probation conditions to be unconstitutionally vague or overbroad when they do not require the probationer to have knowledge of the prohibited conduct or circumstances " (*People v. Kim* (2011) 193 Cal.App.4th 836, 843.) Probation conditions are interpreted with "common sense." (*In re Ramon M.* (2009) 178 Cal.App.4th 665, 677.) A probation condition should be given "the meaning that would appear to a reasonable, objective reader." (*People v. Olguin* (2008) 45 Cal.4th 375, 383.) A probation condition that otherwise would be deemed vague or overbroad "may be constitutional because the juvenile court offered additional oral or written comments clarifying" the condition. (*In re Sheena K., supra*, at p. 891.) We review such constitutional challenges to probation conditions de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Given the court's lengthy comments on the minor's academic history at the dispositional hearing, we reject the minor's claim that the condition that she "do well in school" and "use [her] best efforts in doing well" is unconstitutionally vague. At the dispositional hearing the juvenile court observed that historically the minor had received mostly Bs and Cs in school, but in the last semester, she had received 3 Fs. The court was skeptical of the minor's explanation to the probation officer that she had just been lazy and asked the minor for a further explanation. The minor explained that she had been in the process of transferring schools. The court opined that "the coinciding of the prostitution activity and the rapid decline in grades suggests to me that there's a relationship. That something is ticking inside that's propelling you in this direction. I'm hoping that with counseling . . . you'll be able to get ahold of that. [¶] . . [Y]ou noted . . . you have always been good in math and you love working with numbers. You want to get an accounting degree in college, I think that's great." The court added, "[Y]ou have good smarts, you are able to do well in school when you apply yourself, you just need to make sure you apply yourself." Taken as a whole, the minor should reasonably have understood the condition to mean that she was to attend school regularly, complete her assignments, and make a good faith effort to perform in school as she had in the past. The

12

fact that neither counsel nor the minor questioned the requirement at the dispositional hearing further supports the conclusion that she was not confused by the condition.

Likewise, the condition that the minor not be on a school campus unless enrolled or attending events that the probation officer has approved is not unconstitutionally vague. The minor's suggestion that she could be penalized "even if she were not aware that she was treading on school grounds" is not persuasive. The minor fails to explain how she could accidentally or unknowingly be on a school campus. Adding a knowledge requirement to this condition is unnecessary to the clarity of the requirement.

## DISPOSITION

The court's orders are affirmed.

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Siggins, J.

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Honorable Lewis A. Davis |
| Counsel for Defendant and Appellant: | Christopher F. Morales, in association with the First District Appellate Project |
| Counsel for Plaintiff and Respondent: | Kamala D. Harris, Attorney General |
| | Gerald A. Engler, Senior Assistant Attorney General |
| | Eric D. Share, Supervising Deputy Attorney General |
| | Sharon G. Birenbaum, Deputy Attorney General |
| | Leif M. Dautch, Deputy Attorney General |