Filed 6/4/25  P. v. Williams CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTOINE WILLIAMS,<br><br>    Defendant and Appellant. | H051767<br>(Santa Clara County<br> Super. Ct. No. C1910682) |

This is defendant Antoine Williams's second appeal from his 2019 conviction by a jury for aggravated sex trafficking of a minor (Pen. Code,[1] § 236.1, subd. (c)(2)) and other related crimes.  This appeal arises from a resentencing proceeding conducted on remand following an earlier direct appeal.

In Williams's first appeal, this court affirmed Williams's convictions but reversed the judgment, vacated Williams's sentence, and "remanded to the trial court solely for resentencing consistent with [our] opinion under current law, including Penal Code section 654 as amended by Assembly Bill

---

[1] All further unspecified statutory references are to the Penal Code.

No. 518 (2021-2022 Reg. Sess.)." (*People v. Williams* (Dec. 29, 2022, H048722) [nonpub. opn.] (*Williams*).[2])

On remand, the trial court declined to consider Williams's motion for disclosure of information (discovery motion) under the California Racial Justice Act of 2020 (Stats. 2020, ch. 317, § 3.5 [eff. Jan. 1, 2021]; § 745) (hereafter, RJA or Act). The trial court resentenced Williams to a total term of 15 years to life in prison.

In this second appeal, Williams contends his sentence should be vacated and the matter remanded because the trial court erred in concluding it lacked jurisdiction to consider his discovery motion. Williams also argues his sentence of 15 years to life amounts to cruel and unusual punishment under the United States and California Constitutions.

The Attorney General agrees that the trial court had jurisdiction to entertain Williams's discovery motion and that this matter should be remanded for consideration of that motion. The Attorney General further contends Williams's sentence should be affirmed because it does not violate the constitutional prohibitions against cruel and/or unusual punishment.

For the reasons explained below, we decide that the trial court erred in failing to consider Williams's RJA discovery motion. We thus conditionally reverse the judgment and remand for further proceedings on that motion and any further motion Williams may file under section 745, subdivision (b). We reject Williams's claim of cruel and unusual punishment and affirm his sentence. In the event the trial court reinstates the judgment and sentence,

---

[2] We considered Williams's first appeal together with the direct appeal of his codefendant Christopher Lyon Johnson (H048633) and issued a single opinion addressing both appeals. (See *Williams*, *supra*, H048722.) This court previously granted Williams's request to take judicial notice of the record and our opinion in H048722.

we direct the court to generate new abstracts of judgment to correct an error in the extant abstract of judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Trial*

A description of the evidence presented at the joint trial of Williams and his codefendant Johnson appears in the *Williams* opinion. We incorporate into this opinion the description of the trial evidence set forth therein. (*Williams*, *supra*, H048722.)

On November 26, 2019, a Santa Clara County jury convicted Williams and Johnson of human trafficking by causing a minor victim to engage in a commercial sex act and involving force, fear, coercion, duress or threat of unlawful injury (§ 236.1, subd. (c)(2) (hereafter section 236.1(c)(2)); count 1); pimping where the prostitute is a minor under the age of 16 (§ 266h, subd. (b)(2); count 2); procuring a minor under the age of 16 for prostitution (§ 266i, subd. (b)(2); count 3); pimping where the prostitute is an adult (§ 266h, subd. (a); count 5); and procuring an adult for prostitution (§ 266i, subd. (a)(1); count 6). (*Williams*, *supra*, H048722.) The jury also convicted Johnson of committing a lewd or lascivious act on a child aged 14 or 15 (§ 288, subd. (c)(1); count 4).[3] (*Ibid*.)

In November 2020, the trial court sentenced Williams to 15 years to life in prison on count 1, concurrent to a term of four years on count 5. The court also imposed prison terms on counts 2, 3, and 6, all of which the court stayed pursuant to section 654. (*Williams*, *supra*, H048722.)

### B. *Direct Appeal*

In December 2022, this court rejected Williams's challenges to his convictions (including a claim of error under the RJA) but reversed the

---

[3] All the crimes occurred on or about May 26, 2019.

judgment and vacated Williams's sentence based on a postsentencing amendment to section 654 (Stats. 2021, ch. 441, § 1 [Assem. Bill No. 518]). (*Williams*, *supra*, H048722.)

In our opinion, we concluded the legislative changes to section 654 applied to this matter (as well as Johnson's case) because the judgment was not yet final. (*Williams*, *supra*, H048722.) We further concluded: "Because the record contains no clear indication that the court would not consider reconfigured lesser sentences under current section 654 for Williams and Johnson, we will remand so the trial court may fully resentence each of them anew under the new law. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.) At resentencing the trial court will have the opportunity to exercise its discretion to apply current section 654." (*Ibid.*) Furthermore, because we vacated Williams's sentences entirely and remanded for a "full resentencing," we did not consider Williams's additional claims that his 15-years-to-life sentence constituted cruel and unusual punishment or that a criminal justice administration fee imposed at sentencing should be vacated. (*Ibid.*) We stated that Williams could raise those issues at resentencing. (*Ibid.*)

As noted *ante*, in our disposition, we "remanded to the trial court solely for resentencing consistent with this opinion under current law, including Penal Code section 654 as amended by Assembly Bill No. 518." (*Williams*, *supra*, H048722.)

We issued our remittitur on April 3, 2023.

C. *Proceedings on Remand*

In a sentencing memorandum filed on remand, the district attorney maintained that, given the aggravation and mitigation in this case, sentencing Williams on a "lesser crime" would be inappropriate. The district

4

attorney urged the trial court "to decline to resentence . . . Mr. Williams to lesser terms in this case."

On July 25, 2023, Williams filed a memorandum in which he requested a full resentencing based on this court's remittitur and sought disclosure, under section 745, subdivision (d), of 10 years of data from the district attorney regarding charged and uncharged cases involving certain prostitution-related offenses. In his discovery motion, Williams asserted that his "request for data is based on the theory that the prosecution of [him] is violative of" section 745, subdivision (a)(3).[4] He further asserted that publicly available data from the California Department of Corrections and Rehabilitation (CDCR) "shows the charging of Black individuals with human trafficking and pimping/pandering related charges occurs at a rate disproportionate to their non-BIPOC (Black, Indigenous, and people of color) counterparts."

Williams alleged that in 2022, 2.9 percent of Santa Clara County residents identified as Black or African American, but the CDCR data showed that in December 2021, Black males constituted 88 percent of the inmates serving prison sentences based on Santa Clara County convictions for sex trafficking, pimping, and pandering, and in 2023, Black males constituted 81 percent of this same population. Williams further alleged that "the requested data will establish that [B]lack defendants are disproportionately arrested, charged, prosecuted, convicted, and sentenced to

---

[4] Section 745, subdivision (a)(3) provides: "The defendant was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained convictions for more serious offenses against people who share the defendant's race, ethnicity, or national origin in the county where the convictions were sought or obtained."

5

prison for violations of pimping, pandering, and human trafficking when compared to other non-Black [d]efendants – especially when compared to their population share within this county."

The district attorney opposed Williams's discovery motion, arguing that the motion exceeded the scope of this court's limited remand order. The district attorney maintained this matter was "remanded for resentencing for one specified purpose: to give the trial court an opportunity to consider exercising its new discretion under amended Penal Code section 654." The district attorney contended the remand order "does not empower th[e] [trial c]ourt to litigate a Racial Justice Act challenge to pretrial and presentence prosecutorial decisions." The district attorney further maintained that instead of filing a discovery motion on remand, Williams could file a petition for writ of habeas corpus after January 1, 2024, at which time the RJA would apply to all cases " 'regardless of when the judgment or disposition became final.' ([] § 745, subd. (j)(3).)"

On September 19, 2023, the trial court held a hearing on the discovery motion. Williams's defense counsel asserted that "once the case was made unfinal by the [C]ourt of [A]ppeal[], the [trial c]ourt has a duty to apply all new ameliorative laws." Counsel noted that the RJA had not been in effect at the time of Williams's 2019 trial and disagreed with the district attorney's position that the discovery request should be addressed after January 1, 2024, when the RJA would be "retroactive and any person serving time in state prison or county jail can have their sentence looked at even if it is final."

The trial court observed that "there really isn't any question that the Racial Justice Act is something that needs to be addressed as part of this case and . . . really the only question before the [c]ourt [] is essentially the procedure -- the procedural vehicle for that to be done." The court continued:

6

"On the one hand, it can be done before a resentencing as the [d]efense is requesting, on the other hand there is a procedure going into effect very soon which will allow for a habeas corpus proceeding which does lend itself to further investigation and development of facts that are beyond the record."

The trial court further commented, "I think that it is notable that the [C]ourt of [A]ppeal[] was specific in its remand indicating to the [c]ourt what it should consider or what areas it was remanding the [c]ourt to consider. And I think that the [c]ourt is limited by the remand that the [C]ourt of [A]ppeal[] made. I don't want to read the opinion or the remand as being so [broad] as to reopen issues that essentially go to the underlying conviction." The court reiterated that it "seems inappropriate" to allow discovery in the context of the resentencing and a habeas corpus proceeding is "more of the appropriate vehicle."

The trial court ruled that it is "going to treat the remand as a limited one to allow the [c]ourt to apply the law change as directed by the [C]ourt of [A]ppeal[] and allow the process for the Racial Justice Act to move forward on its own and allow obviously the [d]efense to bring that issue to the [c]ourt's attention whenever they feel they've established appropriate evidence and reasons and that can be taken up in its due course."

After the trial court denied the discovery motion, Williams filed a resentencing memorandum and statement in mitigation (resentencing memorandum). Williams asked the court to exercise its discretion under section 1385 to strike the 15-years-to-life penalty set forth in section 236.1(c)(2), and claimed such a sentence would constitute cruel and unusual

7

punishment.[5] Williams challenged the three aggravating factors stated in the probation officer's report prepared for his original sentencing proceeding (see Cal. Rules of Court, rule 4.421(a)(8) & (b)(4)–(5)) and provided the trial court information regarding his personal background, limited criminal history, reduced relative culpability in the instant crime as an aider and abettor/coconspirator, community support, empathy and recognition that his actions were wrongful, and exemplary record while incarcerated. Williams attached several documents to his resentencing memorandum, including his high school transcript (which showed he had graduated in June 1994) and letters from relatives, friends, and a pastor.

On December 19, 2023, the trial court resentenced Williams. The court said it had "spent a considerable amount of time considering" the appropriate sentence and believed "the conduct in this case is extremely serious." The court acknowledged "there are differences" between Williams's and Johnson's conduct in this case but concluded that both "were significantly involved in this conduct." The court also acknowledged the information Williams had presented about his background and history but stated that it "cannot find that it's in the interest of justice to strike the additional [15-years-to-life] punishment under [section] 236.1" and that "it is most appropriate to stay

[5] Section 236.1 provides in relevant part: "(c) A person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of [s]ection 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking. A violation of this subdivision is punishable by imprisonment in the state prison as follows: [¶] . . . [¶] (2) Fifteen years to life and a fine of not more than five hundred thousand dollars ($500,000) when the offense involves force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person."

. . . the lesser punishments" rather than the punishment under section 236.1(c)(2). The court imposed 15 years to life in prison on count 1, concurrent to a midterm of four years on count 5. The court also imposed midterms on counts 2, 3, and 6, all of which the court stayed pursuant to section 654.

## II. DISCUSSION

### A. *RJA Discovery Motion*

Williams contends he made the requisite showing for discovery under section 745, subdivision (d), and the trial court erred in concluding that it lacked jurisdiction to entertain his discovery motion on remand. Relying on section 745, subdivision (j)(1), Williams asserts that the RJA applies to his nonfinal judgment. He additionally argues that because the RJA took effect after his original sentence was imposed, he is entitled to seek discovery in connection with his resentencing and the application of the RJA to this matter on remand is consistent with the " 'full resentencing rule.' "

The Attorney General agrees that the trial court erred in concluding it lacked jurisdiction to consider Williams's RJA discovery motion.

Given the California Supreme Court's recent decision in *People v. Lopez* (2025) 17 Cal.5th 388 (*Lopez*)—issued after the trial court's order in this matter—we agree and decide the trial court should have considered Williams's RJA discovery motion on remand.

#### 1. Relevant Provisions of the RJA

"The Legislature passed the RJA in 2020 with a stated aim 'to eliminate racial bias from California's criminal justice system' and 'to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing.' [Citation.] To that end, the RJA prohibits the state from seeking or obtaining a criminal conviction, or seeking, obtaining, or imposing

9

a sentence, on the basis of race, ethnicity, or national origin." (*People v. Wilson* (2024) 16 Cal.5th 874, 944–945 (*Wilson*).)

Section 745 specifies four categories of conduct that may serve as the basis for a violation of the Act.  (§ 745, subd. (a)(1)–(4).)  As relevant here, section 745, subdivision (a) provides that "defendants may establish a violation of the Act by showing, by a preponderance of the evidence, that they were charged or convicted of a more serious offense than defendants of other races who are similarly situated, or that they received a longer or more severe sentence by nature of their race, or the race of their victim.  (*Id.*, subd. (a)(3), (4).)  A defendant may request disclosure of evidence relevant to these claims, and the trial court shall order disclosure upon a showing of good cause.  (*Id.*, subd. (d).)"[6]  (*Wilson, supra*, 16 Cal.5th at p. 945; see also *Young v. Superior Court* (2022) 79 Cal.App.5th 138, 159 (*Young*) [concluding that "good cause" for discovery under the RJA requires only "a plausible factual foundation, based on specific facts, that a violation of the [RJA] 'could or might have occurred' in [the] case"].)

"When it was first passed, the RJA applied only prospectively, to cases in which judgment had not yet been entered as of the Act's effective date of January 1, 2021.  [Citation.]  But in 2022, the Legislature extended the Act to additional categories of cases, effective at various points over the next several years.  [Citation.]  As relevant here, the 2022 amendments made the Act immediately applicable to all cases in which judgment is not final (§ 745,

---

[6] Section 745, subdivision (d) provides in pertinent part:  "A defendant may file a motion requesting disclosure to the defense of all evidence relevant to a potential violation of subdivision (a) in the possession or control of the state.  A motion filed under this section shall describe the type of records or information the defendant seeks.  Upon a showing of good cause, the court shall order the records to be released."

subd. (j)(1)).” (*Wilson, supra*, 16 Cal.5th at p. 946.) Further, as of “January 1, 2024, the Act applies to all cases in which the petitioner is currently serving a sentence for felony or juvenile offenses ‘regardless of when the judgment or disposition became final’ (§ 745, subd. (j)(3)).” (*Id*., at p. 946, fn. 13.) Such petitioners may file a petition for writ of habeas corpus raising a claim under section 745. (§§ 745, subd. (j)(3), 1473, subd. (e).)

“In 2023, the Legislature further amended the RJA to provide additional guidance about how an RJA claim may be raised. As originally enacted, section 745, subdivision (b) provided that a ‘defendant may file a motion in the trial court or, if judgment has been imposed, may file a petition for writ of habeas corpus or a motion under [s]ection 1473.7 in a court of competent jurisdiction, alleging a violation of subdivision (a).’ As amended by Assembly Bill No. 1118 (2023–2024 Reg. Sess.) . . ., which became effective on January 1, 2024, the statute now specifies that a defendant ‘may file a motion pursuant to this section, or a petition for writ of habeas corpus or a motion under [s]ection 1473.7, in a court of competent jurisdiction, alleging a violation of subdivision (a). For claims based on the trial record, a defendant may raise a claim alleging a violation of subdivision (a) on direct appeal from the conviction or sentence. The defendant may also move to stay the appeal and request remand to the superior court to file a motion pursuant to this section.’ (§ 745, subd. (b).)” (*Wilson, supra*, 16 Cal.5th at pp. 946–947, fn. omitted.)

“[I]f ‘a motion is filed in the trial court and the defendant makes a prima facie showing of a violation of subdivision (a), the trial court shall hold a hearing.’ (§ 745, subd. (c).) If, after a hearing, the court finds a violation of section 745, subdivision (a) by a preponderance of the evidence, the court ‘shall impose a remedy specific to the violation.’ (*Id*., subd. (e).) ‘Before a

judgment has been entered,' a court may remedy a violation of the Act by declaring a mistrial, empaneling a new jury, dismissing enhancements or special circumstances or allegations, or reducing one or more charges. (*Id.*, subd. (e)(1)(A), (B), (C).) 'After a judgment has been entered,' the remedies depend on the nature of the violation but include vacating the sentence and conviction and ordering further proceedings. (*Id.*, subd. (e)(2)(A), (B).)" (*Wilson*, *supra*, 16 Cal.5th at pp. 945–946; see also § 745, subd. (k) [allowing the state to prove "beyond a reasonable doubt that the violation did not contribute to the judgment" "[f]or petitions that are filed in cases for which judgment was entered before January 1, 2021, and only in those cases, if the petition is based on a violation of paragraph (1) or (2) of subdivision (a)"].)

### 2. Principles Governing Remand Orders

"Ordinarily, an appellate court has, among others, the power to remand a cause to the trial court 'for such further proceedings as may be just under the circumstances.' " (*People v. Flores* (2003) 30 Cal.4th 1059, 1065; see also § 1260; *Wilson*, *supra*, 16 Cal.5th at pp. 948–949.) "It is well-established that '[t]he order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned.' [Citations.] In short, when an appellate court remands a matter with directions governing the proceedings on remand, ' "those directions are binding on the trial court and must be followed. Any material variance from the directions is unauthorized and void." ' " (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 64, italics omitted; see also *People v. Lewis* (2004) 33 Cal.4th 214, 228.) "[T]he dispositional language of the opinion . . . constitutes the remittitur directions." (*Frankel v. Four Star International, Inc.* (1980) 104 Cal.App.3d 897, 902.)

12

Notwithstanding these well-established principles, our Supreme Court recently made clear that "[t]he scope of the superior court's jurisdiction as defined by a remittitur does not prevent the retroactive application of ameliorative laws." (*Lopez, supra,* 17 Cal.5th at p. 396.) "[A] criminal case in which the sentence is not yet final, including one in which an appellate court has affirmed the conviction and remanded for reconsideration of sentencing-related issues, is not final for purposes of [*In re Estrada* (1965) 63 Cal.2d 740], and the benefits of supervening ameliorative legislation apply retroactively." (*Id.* at pp. 392–393; see also *id.* at p. 397 [" 'there is no "judgment of conviction" without a sentence' "].)

3. Standard of Review

Generally, an appellate court reviews a trial court's ruling on a defendant's discovery motion for an abuse of discretion. (*People v. Prince* (2007) 40 Cal.4th 1179, 1232.) We review de novo the trial court's interpretation of a remittitur. (See *Ruegg & Ellsworth v. City of Berkeley* (2023) 89 Cal.App.5th 258, 264; *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859.) "We look to the wording of our directions, read in conjunction with the opinion as a whole." (*Ruegg & Ellsworth*, at p. 264.)

Likewise, "[t]he interpretation of a statute and the determination of the scope of a trial court's authority under relevant statutes are questions of law that we review de novo." (*People v. Rogers* (2025) 108 Cal.App.5th 340, 354 (*Rogers*).) " 'It is well settled that the proper goal of statutory construction "is to ascertain and effectuate legislative intent, giving the words of the statute their usual and ordinary meaning. When the statutory language is clear, we need go no further." ' [Citation.] We consider the language in the context of the entire statute and the statutory scheme of which it is a part [citation],

13

harmonizing provisions relating to the same subject matter, to the extent possible." (*Satele v. Superior Court* (2019) 7 Cal.5th 852, 858–859.)

     4. <u>Analysis</u>

Section 745 expressly applies "[t]o all cases in which judgment is not final." (*Id.*, subd. (j)(1).) The judgment in this case was not final when Williams filed his discovery motion on remand. (See *People v. Padilla* (2022) 13 Cal.5th 152, 162–163.) Under the plain terms of section 745, subdivision (j)(1), section 745 applied to this nonfinal case during the remand proceedings. (See *People v. Garcia* (2022) 85 Cal.App.5th 290, 297–298 (*Garcia*).)

Nothing in section 745, subdivision (d), limits when during a criminal action the defendant may file a motion requesting information relevant to a potential RJA violation. In the absence of such a limitation and given the Legislature's intent "to ensure that individuals have access to all relevant evidence . . . regarding potential discrimination in seeking or obtaining convictions or imposing sentences" (Stats. 2020, ch. 317, § 2(j)), we construe section 745, subdivision (d) to permit discovery during a remand proceeding that encompasses a full resentencing. (See *People v. Serrano* (2024) 106 Cal.App.5th 276, 287, review granted Jan. 15, 2025, S288202 ["Although the statute is not explicit about the scope of its application, the plain language of subdivision (d) does not limit the availability of discovery to pretrial proceedings and habeas corpus proceedings."]; *Young, supra*, 79 Cal.App.5th at p. 169 [observing that "where a court is inclined to deny a motion presented so close to the date of trial that the discovery process itself threatens to interfere with the court's obligation to provide a speedy trial, such a motion should be denied without prejudice to its renewal posttrial or even postjudgment"].)

14

As detailed *ante* (see pt. I.B.), our remittitur affirmed Williams's convictions but reversed the judgment, vacated Williams's sentence, and remanded "solely for resentencing consistent with [our] opinion under current law," including section 654. (*Williams, supra,* H048722.) In the body of our opinion, we explained that our remand encompassed a full resentencing. (*Ibid.*; see *Rogers, supra,* 108 Cal.App.5th at p. 358 [" 'the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant' "].)

Given that section 745 expressly applied to this matter on remand and authorized Williams's discovery motion pending resentencing, section 745 is a "current law" applicable to Williams's full resentencing. (See *Garcia, supra,* 85 Cal.App.5th at p. 298; see also *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460 ["[I]t is well settled that when a case is remanded for resentencing after an appeal, the defendant is entitled to 'all the normal rights and procedures available at his original sentencing' [citations], including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed."]; *Lopez, supra,* 17 Cal.5th at p. 396.) We thus conclude the trial court should have considered Williams's discovery motion under section 745, subdivision (d) on remand.

Regarding the remedy for this error, Williams asks us to reverse his sentence and remand the matter for further proceedings under section 745, subdivision (d). By contrast, the Attorney General asserts that we should affirm Williams's sentence (rejecting his cruel and unusual punishment claim) and remand "for the limited purpose of conducting proceedings related to [Williams]'s RJA discovery motion."

Given our conclusion *post* that Williams's current sentence does not amount to cruel and/or unusual punishment, we will conditionally reverse the

15

judgment but affirm the sentence and remand solely for the trial court to conduct proceedings on Williams's discovery motion, as well as any further RJA motion Williams may choose to file under section 745, subdivision (b). (See *People v. Howard* (2024) 104 Cal.App.5th 625, 663 [conditionally reversing the judgment and remanding for further proceedings on defendant's RJA motion but otherwise affirming defendant's conviction and sentence]; see also *People v. Gaines* (2009) 46 Cal.4th 172, 180 ["[T]he proper remedy when a trial court has erroneously rejected a showing of good cause for *Pitchess* discovery and has not reviewed the requested records in camera is not outright reversal, but a conditional reversal with directions to review the requested documents in chambers on remand."]; *Id.*, at p. 181, fn. 3; *People v. Moore* (2006) 39 Cal.4th 168, 176–177.)

We express no opinion on the merits of Williams's discovery motion or the remedy that should be imposed if Williams were to file a motion under section 745, subdivision (b), and the trial court were to find that Williams has proved a violation of the Act.

B. *Cruel and Unusual Punishment Claim*

Williams acknowledges that his 15-years-to-life sentence for "coerc[ing] a minor into human trafficking might be appropriate in the abstract." Nevertheless, he contends his role in the offense was "relatively minor" and he was "much less culpable" than codefendant Johnson, who received the same sentence. Williams points to his background, minimal criminal history, and " 'below average risk' " for committing another sexual offense as reasons why a "life sentence is disproportionate to a need to protect the public." He cites his substantial familial and community support, as well as his positive behavior while incarcerated. He asserts that his sentence is equivalent to that imposed for the incomparable crime of second degree murder and so

16

disproportionate to his culpability as to constitute cruel and unusual punishment under the federal and state constitutions.

      1. <u>Applicable Law</u>

The United States Constitution prohibits " ' "cruel *and* unusual" punishment,' " while the California Constitution prohibits " ' "[c]ruel *or* unusual" punishment.' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*).) " 'As a result, we construe the state constitutional provision "separately from its counterpart in the federal Constitution." ' " (*Ibid*.; see also *People v. Haller* (2009) 174 Cal.App.4th 1080, 1092 ["California affords greater protection to criminal defendants by prohibiting cruel 'or' unusual punishment."].)

"The Eighth Amendment contains a ' "narrow proportionality principle" that "applies to noncapital sentences." ' [Citation.] 'This right protects persons from excessive punishment, so that a sanction for criminal behavior is graduated and proportional to the severity of the offense.' [Citation.] However, '[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.' [Citation.] Consequently, '[s]uccessful challenges based on proportionality are extremely rare.' " (*People v. Guenther* (2024) 104 Cal.App.5th 483, 532 (*Guenther*).)

"Article I, section 17 of the California Constitution ' "separately and independently lays down the same prohibition" ' against ' "the imposition of a penalty that is disproportionate to the defendant's 'personal responsibility and moral guilt.' " ' [Citation.] Under the California Constitution, a sentence may violate the prohibition against cruel or unusual punishment if ' "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." ' [Citation.]

17

Three factors in ascertaining if a punishment is cruel or unusual are (1) the nature of the offense and the nature of the offender with regard to the degree of danger both present to society, (2) a comparison of the punishment with the punishments prescribed for more serious crimes in the jurisdiction, and (3) a comparison of the punishment with punishments for the same offense in other jurisdictions." (*Guenther*, *supra*, 104 Cal.App.5th at pp. 532–533.)

"We independently decide as a question of law whether a punishment is cruel or unusual, viewing any underlying disputed facts in the light most favorable to the judgment." (*Guenther*, *supra*, 104 Cal.App.5th at p. 533.)

2. Analysis

Beginning with the factors relevant to our state constitutional prohibition against cruel or unusual punishment, the first factor regarding the nature of the offense and the offender does not favor Williams. As detailed in our prior opinion (*Williams*, *supra*, H048722), Williams was 43 years old when he committed the charged crimes in 2019. He met the 14-year-old victim, A. Doe (hereafter A.), at a hotel in Gary, Indiana, after she had had sex with a man in a hotel room. Williams asked A. what was going on and if she needed anything. A. told Williams she had gotten into a fight and had nowhere to go. He invited her to his room, gave her ecstasy, and asked if she wanted to go to California to make money. A. thought Williams was referring to drug dealing and agreed. Williams transported A. to California in coordination with his cousin Johnson. After Williams and A. arrived in California, Williams hit A. and kicked and stomped on her face, causing a broken blood vessel in her eye and leaving a shoe-shaped mark on her. Williams accompanied Johnson and A. (among others) in a prostitution circuit around California and booked hotel rooms for the enterprise. Williams's cell phone included A.'s cell phone number, which was listed under

18

the name " ' "Bitch." ' " (*Ibid*.) In a text message to A., Williams wrote " ' "You fuck my cuz," ' " threatened that A. " ' "better have some money," ' " and referred to her " ' "wet ass." ' " (*Ibid*.) Other text messages appeared to show Williams communicating with customers responding to prostitution advertisements. When the police responded to A.'s text message to a crisis hotline sent from a Motel 6 in San Jose, Williams told them the " ' "girl is in the room" ' " and gave them the key to A.'s room. (*Ibid*.)

Regarding Williams's background, at the time of the crimes, Williams was on formal probation (granted in Missouri in June 2018) following a conviction for possession of a controlled substance. In addition, Williams had previously been convicted of misdemeanors in Georgia for driving with a suspended or revoked license and criminal trespass. He had an outstanding misdemeanor warrant from Georgia (issued in 2016) for violating probation on his criminal trespass conviction. He also had an outstanding felony warrant from Placer County (issued in 2017) for unauthorized use of personal identifying information (§ 530.5, subd. (a)), burglary (§ 459), and grand theft (§ 487, subd. (a)).

Although Williams's criminal history was relatively minor and his score on the Static-99R (a risk assessment instrument) indicated that he presents a below average risk for sexual offense recidivism, these facts are negligible in comparison to his weeks-long participation (while on probation) in an ongoing criminal enterprise involving a vulnerable minor who was coerced into repeated acts of prostitution. (See *Baker*, *supra*, 20 Cal.App.5th at p. 725 [explaining the defendant's " 'insignificant criminal record' " and lack of prior history of sex crimes are favorable to him but "do not outweigh the other factors"].) We acknowledge Williams's positive conduct (including his caregiving for sick family members, efforts to rebuild his relationships with

19

family and friends, and commendable behavior while in custody) and the hardships and tragedies Williams has endured in his life (as described in his resentencing memorandum). Even considering these positive and mitigating circumstances, the totality of Williams's behavior surrounding the charged offenses evinces his willingness to act with callousness toward a vulnerable minor and weighs against him under the first factor.

Turning to the second factor, "[t]he human trafficking statute (§ 236.1) was modified in 2012 by Proposition 35, the Californians Against Sexual Exploitation Act (CASE Act). (Prop. 35, § 6, as approved by voters, Gen. Elec. (Nov. 6, 2012), eff. Nov. 7, 2012.) The measure added subdivision (c)" (*People v. Moses* (2020) 10 Cal.5th 893, 901 (*Moses*)), which provides for a punishment of 15 years to life under certain circumstances. (§ 236.1(c)(2).)

"The ballot materials make clear that a primary goal of Proposition 35 was to stop the exploitation of children by online predators." (*Moses*, *supra*, 10 Cal.5th at p. 910.) "The following findings, among others, are included in the CASE Act: 'The people of the State of California find and declare: [¶] 1. Protecting every person in our state, particularly our children, from all forms of sexual exploitation is of paramount importance. [¶] 2. Human trafficking is a crime against human dignity and a grievous violation of basic human and civil rights. Human trafficking is modern slavery, manifested through the exploitation of another's vulnerabilities. [¶] 3. Upwards of 300,000 American children are at risk of commercial sexual exploitation, according to a United States Department of Justice study. Most are enticed into the sex trade at the age of 12 to 14 years old, but some are trafficked as young as four years old. Because minors are legally incapable of consenting to sexual activity, these minors are victims of human trafficking whether or not force is used.' " (*In re M.D.* (2014) 231 Cal.App.4th 993, 998–999.)

20

"The stated purpose of the law was to 'ensure just and effective punishment of people who promote or engage in the crime of human trafficking.' [Citation.] To that end, the measure increased the punishment for human trafficking of minors from four, six, or eight years in prison [citation], to five, eight, or 12 years for nonforcible trafficking, and 15 years to life when the offense involves force, fear, fraud, or other enumerated factors." (*Moses*, *supra*, 10 Cal.5th at p. 910.)

Generally, "we must defer to the Legislature and the people of California . . . in adoption of a penological theory and in determination of the length of sentences." (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 364; see also *People v. Martinez* (1999) 76 Cal.App.4th 489, 494; *Baker*, *supra*, 20 Cal.App.5th at p. 727.) In comparing the 15-years-to-life sentence prescribed by section 236.1(c)(2), with punishments prescribed for other crimes, given the grave harm and trauma caused by human trafficking, the electorate's decision to punish aggravated sex trafficking of a minor commensurate with second degree murder (§ 190, subd. (a)) "does not suggest this is that 'rarest of cases' in which 'the length of a sentence mandated by the Legislature [or electorate] is unconstitutionally excessive.' " (*Baker*, at p. 730.) In fact, the Legislature has prescribed a sentence of 15 years to life in prison for several aggravated sex offenses. (See, e.g., §§ 269, subd. (b) [punishing aggravated sexual assault of a child by imprisonment for 15 years to life], 667.61, subd. (b) [California's One Strike law requiring a sentence of 15 years to life for certain sexual offenses under aggravating circumstances].) The Legislature and electorate have clearly evinced their intent to strictly punish those who commit aggravated sexual offenses (especially those perpetrated on minors), and we defer to " 'legislation designed to protect children, who all too frequently are helpless victims of sexual offenses.' " (*Baker*, at p. 729.)

Because Williams in his appellate briefing does not address the third factor (i.e., to compare his sentence with punishments in other states for the same offense), we consider this "a concession that his sentence withstands a constitutional challenge" under that factor of the state constitutional analysis. (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231.)

Considering the relevant factors in context, we conclude that Williams's sentence does not violate the California Constitution's prohibition against cruel or unusual punishment because his term of 15 years to life in prison is not so disproportionate to his crime that it shocks the conscience and offends fundamental notions of human dignity. Likewise, we conclude under the Eighth Amendment that Williams fails to show this is " 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.' " (*Ewing v. California* (2003) 538 U.S. 11, 30 [holding that a sentence of 25 years to life, imposed for the offense of felony grand theft under the Three Strikes law, is not grossly disproportionate]; see also *United States v. Alaboudi* (8th Cir. 2015) 786 F.3d 1136, 1146; *United States v. Flanders* (11th Cir. 2014) 752 F.3d 1317, 1343.)

C. *Correction to the Abstract of Judgment*

Although not raised by either Williams or the Attorney General, the abstract of judgment (dated December 28, 2023) is incomplete. Although Williams was sentenced to both indeterminate and determinate terms, the trial court clerk completed only a single abstract of judgment designed for an indeterminate commitment (Judicial Council form CR-292) and listed the determinate-term counts (counts 2, 3, 5 & 6) on that abstract (without stating the sentences imposed by the court on those determinate-term counts in the abstract of judgment). The determinate terms imposed by the trial court

should have been listed on a separate abstract of judgment applicable to determinate terms.  (See Judicial Council form CR-290.)

If the trial court does not conduct a new resentencing proceeding on remand, we direct the trial court to prepare separate abstracts of judgment for the indeterminate term (on count 1) and the determinate terms (on counts 2, 3, 5 & 6) of Williams's present sentence and transmit those abstracts to the CDCR.

## III.  DISPOSITION

The judgment is conditionally reversed, and the matter is remanded for further proceedings consistent with this opinion on Williams's motion for discovery under Penal Code section 745, subdivision (d), and any further motion Williams may file under section 745, subdivision (b).  We otherwise affirm Williams's sentence.  If the trial court denies Williams relief under section 745 on remand, the judgment will be reinstated.  If the trial court grants Williams relief under section 745 on remand, the trial court shall conduct any further proceedings as necessary.

If the trial court reinstates the judgment and does not conduct a new sentencing proceeding on remand, the trial court is directed to prepare separate abstracts of judgment for the indeterminate term (on count 1) and the determinate terms (on counts 2, 3, 5 & 6) of Williams's present sentence. The trial court clerk is directed to forward a copy of those abstracts of judgment to the California Department of Corrections and Rehabilitation.

_____
Danner, J.

WE CONCUR:



_____
Greenwood, P. J.




_____
Lie, J.

**H051767**
***The People v. Williams***